**Esther JAMES, Plaintiff,**

v.

**John F. McLINDEN, Judge of the Juvenile Court for the Second District, et al., Defendants.**

**Civ. No. 13127.**

United States District Court,
D. Connecticut.

May 23, 1969.

William H. Clendenen, Jr., William D. Goodrich, New Haven, Conn., for plaintiff; Charles Pulaski, Jr., New Haven, Conn., of counsel.

Robert K. Killian, Atty. Gen., Stephen O'Neill, Thomas J. Daley, Asst. Attys. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

On May 2, 1969, the plaintiff, Esther James, instituted this action in forma pauperis for a temporary restraining order, injunctive relief, and a declaratory judgment based on an alleged depriva-

tion of her constitutional rights as a result of certain actions of the defendants, Judge John McLinden of the Juvenile Court, Mary Bowery, clerk of that court and Commissioner Bernard Shapiro of the State Welfare Department. 28 U.S.C. §§ 2201, 2202; 28 U.S.C. § 1343(3), (4); 42 U.S.C. § 1983.

On May 7, a hearing was held at which the plaintiff withdrew her request for a temporary restraining order after the parties agreed that the matter should proceed on the merits and be consolidated with the application for injunctive relief. Rule 65(a) (2), F.R. Civ.P.

At the conclusion of the hearing on May 9, 1969, the Court granted immediate relief to the plaintiff and ordered prompt compliance by the defendants. The purpose of this Memorandum of Decision is to set forth the Court's findings of fact and conclusions of law in support of its oral order.

The plaintiff, Esther James, is a 50-year old unmarried Negro woman who has resided in New Haven, Connecticut, since 1937. Her sole source of support is a disability allowance of $80 per month subsistence, plus rent, from the State.

On September 27, 1966, Beverly Moore, a heroin addict, gave birth to a baby girl, Sean Renee. Unable to care for the baby, Mrs. Moore turned the child over to her cousin, Rosalind Rogers. In December, 1966, after Mrs. Moore was sentenced to jail, the Rogers woman prevailed upon the plaintiff to take care of the child. Upon Mrs. Moore's release from jail, she visited the plaintiff, gave her a few dollars, and told the plaintiff she could keep Sean and to "take good care of her." The plaintiff has not seen Mrs. Moore since then.

From that date to the present, the plaintiff has raised Sean as her own child. The child regards the plaintiff as her natural mother. Dennis Olsen, a social worker employed by the State, testified that the plaintiff has provided Sean with all the care and affection of a "good mother." The plaintiff has fed and clothed Sean from the subsistence money she received; the State has not contributed any additional funds for Sean's support. Medical attention has been fully provided Sean and there is no question she is a healthy, happy child.

On December 26, 1968, the State Welfare Department, through its District Director, filed a "Petition of Alleged Neglect" in the Juvenile Court in New Haven. The petition stated Sean had been abandoned by her parents and "is presently being cared for through an informal arrangement which is neither legal nor healthy." The petition acknowledged that Sean was living with "Mrs. Esther James—Friend."

No official notice of the petition or the hearing scheduled for March 17, 1969, was given to the plaintiff, contrary to the clear mandate of the statute which provided that in such cases a summons, with a copy of the petition, shall be served upon "the parent or parents, guardian or other persons having control of the child." The statute requires an appearance in court to "show cause why such child should not be dealt with according to the provisions of this part." Conn.Gen.Stat. § 17–61.

However, Olsen mentioned during a visit to her home that a hearing was to be held on March 17, 1969 "to take Sean away because of neglect." Believing that she was being accused of mistreating the child, the plaintiff promptly engaged Attorney William H. Goodrich of the New Haven Legal Assistance Association, Inc., to represent her. Mr. Goodrich attempted to file an appearance in the case, but defendant Bowery refused to accept it on the ground the plaintiff had "no standing."

On March 17, the plaintiff and her attorney attempted to gain entrance to the hearing being conducted in the Juvenile Court building. Both were denied admittance to the courtroom. All efforts to see Judge McLinden failed.

At the hearing, Miss Bowery was appointed Sean's guardian ad litem. Miss Bowery is not a lawyer and had neither seen the child nor spoken to the plaintiff. At the conclusion of the hearing, Judge McLinden found that Sean was an "uncared for-neglected child" and ordered her into the custody of the Commissioner of Welfare.

Attorney Goodrich thereupon attempted to file an appeal from the court's order, submitting his papers in proper form along with the required $45.00 filing fee. His papers were returned with a letter from Miss Bowery which stated:

> We have discussed the matter of your appeal with Judge John F. McLinden and he has advised us that the Juvenile Court cannot accept this appeal.

> We are therefore returning your appeal and check No. 6318 in the amount of $45.00.

This action was in direct contravention of a statute which permits appeals by "all persons aggrieved" by any order of the Juvenile Court. Conn.Gen.Stats. §§ 17–61, 17–62, 17–66b, 17–70.

A Superior Court judge refused to entertain plaintiff's writ of mandamus, and all informal appeals to a Justice of the Supreme Court of Connecticut and another judge of the Juvenile Court failed. This action followed.

■ Upon these facts, it is clear that the plaintiff's rights under the Fourteenth Amendment to due process and equal protection of the laws were denied under color of state law by the proceedings on March 17 in the Juvenile Court, the denial of her right to appeal, and the failure of the Superior Court to grant her relief by way of mandamus. The Court has power to redress these wrongs. 28 U.S.C. § 1343; 42 U.S.C. § 1983; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ Under Connecticut law, the plaintiff, as a person "in control" of Sean, was entitled to written notice of the hearing involving Sean's custody. She had a right to appear and be heard, personally and through counsel. To refuse to hear Miss James, who was in the best position to give relevant and weighty testimony on the question of alleged neglect, was a clear violation of the plaintiff's rights under state law. Thereafter, the denial of Miss James' right of appeal infected the proceedings beyond repair within the state legal system. These deprivations reach federal constitutional dimensions and require federal intervention. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886); see also, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

Moreover, there is no question that the plaintiff intended to, and did, assume the rights, duties, and privileges of a parent to Sean. She may not have formed such an intention at the moment Sean was placed in her custody or during the first few months she cared for the child. However, within a relatively short time, the plaintiff grew to love Sean as her own and, within the limits of a small income, she fed, clothed and cared for the child. Having found physical and emotional security with the plaintiff, Sean has responded with the love and affection usually reserved for a mother.

■ There is no sound reason to deny a person who has voluntarily assumed the obligations of parenthood over a child the same basic rights to due process a natural or legal parent possesses when the state intervenes to disrupt or destroy the family unit. "The policy of our law has always been to encourage family relationships, even those foster in character." Banks v. United States, 267 F.2d 535, 539 (2 Cir. 1959).

■ This is not to say, however, that the State is barred from further action to protect Sean and to insure her welfare. A person in loco parentis must fulfill the obligations of that relationship or else forfeit custody of the child

under state law. In any further proceedings, however, the plaintiff must be accorded the same rights as a natural or legal parent. See, Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 122 (1952).