294 So.2d 50 (1974)
In the Interest of K.S.K., a Minor Child.
No. T-302.
District Court of Appeal of Florida, First District.
May 7, 1974.
Duane N. Ivester and Chester G. Senf, Jacksonville, for appellant.
Joseph F. Duszlak of Duszlak & Hemphill, Jacksonville, for appellees.
PER CURIAM.
This is an appeal by the Division of Family Services of the Florida Department of Health and Rehabilitative Services seeking reversal of an order entered by the circuit court denying appellant's petition for permanent commitment of the subject child.
This action was initiated in the court below by a petition for care, custody and control of the child filed on July 5, 1972, by appellant as a result of a child abuse complaint made to appellant. Following the complaint, a caseworker visited the child's home and observed what she termed the abnormal condition of the child and insisted she be taken to a hospital for examination. She and appellee took the child to a hospital where a diagnosis of malnourishment was made.
Upon the filing of the aforesaid petition, the court issued an order committing the child to the temporary care, custody and control of the State pending further hearing. Two days later, the couple who had been exercising actual custody of the child removed the child from the hospital over protests of the hospital personnel. The child was again removed from the home and placed in the State's care where she has been to the present time.
The record reveals that the child is not the natural child of the couple in whose custody she was found, appellees herein. The uncontradicted evidence shows that the child's natural mother was admitted to the hospital maternity ward under the name of the appellee and upon giving birth, the birth certificate falsely reflected the appellees as the natural parents in whose hands the child was placed shortly after it was born by the natural mother. *51 Upon learning that appellees were not the natural parents, the State filed its petition for permanent commitment. The natural mother was located and she executed a written surrender for adoption to the State. The natural father could not be located but was constructively served with notice of the proceedings by publication.
Following a final evidentiary hearing and argument, the court entered its final judgment on April 23, 1973, denying appellant's prayer for permanent commitment and omitting in said final judgment any designation as to who was to be the custodian of the child.
Several points are raised by appellant as basis for reversal. One of these points which we reject immediately is the State's contention that appellees have no standing to contest or request custody of the child because they are not the natural parents of the child nor in any way related to it. Appellants argue that appellees have never been legally appointed guardians of the child nor have they been granted legal custody. Moreover, the State argues that the natural mother has executed a written consent for adoption of the child, albeit three years after she placed the child in appellees' custody, and in writing surrendered the child to the State for such purpose. Because of such consent the State contends that appellees have no standing here because the care and custody of the child exercised by them was based on what might be termed a "common law adoption", that is, without benefit of any legal action.
If the State's contention on the question of standing per se is sound, then the countless number of couples who have peacefully assumed custody of a child at the behest of its natural parent and have given the child their tender love and care and have assumed the role of loco parentis in a manner unquestionably in the best interest of the child's welfare would have no standing in court to oppose any efforts by the State to take the child away from them only to be put in a foster home for later adoption by third parties. We do not understand that to be the law. We know of no statute or decisional rule which says that persons who have stood in the place of a child's parents and who have given it appropriate care and guidance have no standing to be heard when the State institutes legal action to remove the child from their home, cf. In re R.J.C., Case No. U-338, decided April 9, 1974, by this court not yet reported. The appellant's reliance on State ex rel. Airston v. Bollinger, 88 Fla. 123, 101 So. 282 (1924), is not persuasive. In Airston, the dispute as to child custody arose between parent and grandparent. The question was whether the father had validly and bindingly given or transferred custody of the child to the maternal grandparents because he could not properly care for the child. And, there the court held there was no evidence of intent to do so and there being no question that both parties were fit custodians, the court ruled that the father was entitled to custody. The Airston case did not involve an effort by the State to take the child away and put it up for adoption with third parties. Had that been the case, we seriously doubt that the court would have held that the grandparents had no standing to object even if the father had signed a consent to adopt and surrender to the adoption agency.
Although there is no merit to the appellant's point on the standing question, we do find and hold that appellant is correct in its contention that the trial court misinterpreted the legal effect of the evidence as a whole in failing to declare the child to be a dependent child and failing to find that it would be in the best interest of the child to permanently commit her to the appellant agency for subsequent adoption.
Although evidence was adduced in overwhelming quantities from disinterested persons showing that the child was a dependent child within the meaning of Section 39.01(10), Florida Statutes, F.S.A., the trial court erroneously held that the allegations of the petition for permanent commitment were not sustained. Section 39.01(10), *52 Florida Statutes, F.S.A., defines a "dependent child" to mean in material part as follows:
"(10) `Dependent child' means a child who ... has not proper parental support, maintenance, care ... or who is neglected ... as to medical, psychiatric, psychological or other care necessary for the wellbeing of the child; ... or whose condition or environment are such as to injure or endanger the welfare of the child... ."
The record in the case at bar shows by uncontroverted, undisputed expert medical testimony that the child herein was physically neglected, malnourished and a victim of maternal deprivation. The doctor testified unequivocally that he diagnosed the "grossly abnormal" condition of the child as being caused by malnourishment and maternal deprivation, and while so testifying he ruled out any other cause for such condition. There is no question from the evidence that the child when found in the custody of appellees was in poor physical condition. She evidenced a grossly abnormal weight, abnormal shape of her bones, an inability to walk properly, an inability to talk properly and carried a wound on her chin which required suturing. Although the child was about three years old, she weighed only 22 pounds when first taken into custody by the appellant agency. The examining doctor testified that she was so malnourished that her weight was in the lowest five percentile of children in her age group. The evidence also revealed that after the child was placed in foster care, she experienced significant weight gain and marked physical improvement.
The evidence in the record is clear and convincing that appellees simply have been unable to care for the child in a manner consistent with the child's best interests.
The allegations of dependency in appellant's petition were sustained by the evidence. The legal effect of the evidence in this record leaves no alternative other than the legal conclusion that the child is a dependent child and appellant's petition should have been granted.
Reversed.
RAWLS, C.J., and SPECTOR and JOHNSON, JJ., concur.