No. 51,201

In the Interest of DuYahn Walker

GINA WILSON and IRIS WALKER, *Appellants,* v. STATE OF KANSAS, *Appellee.*

(630 P.2d 1102)

Opinion filed July 17, 1981.

*James Forrest McMahon,* of Wyandotte-Leavenworth County Legal Aid Society, Inc., of Kansas City, argued the cause and was on the brief for the appellants.

*James Foster,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, *Nick A. Tomasic,* district attorney, and *Theodore M. Dinges,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: Gina Wilson, mother of DuYahn Walker, a minor child, and Iris Walker, DuYahn's maternal grandmother, appeal from a trial court's order finding DuYahn a deprived child and severing the parental rights of Gina Wilson. Gina Wilson also appeals the Wyandotte District Court decision of April 24, 1980, where the court found it had jurisdiction over Gina Wilson.

On November 27, 1978, 13-month-old DuYahn Walker injured his leg and was taken to the Veterans Administration Hospital and to the University of Kansas Medical Center. It was discovered his leg was broken. Kansas Social and Rehabilitation Services received referrals from both hospitals concerning the welfare of DuYahn indicating there was evidence of child abuse. As a result, a temporary custody order was entered restraining the appellants from removing DuYahn from the hospital. A petition

alleging DuYahn to be a deprived child was filed in Wyandotte Juvenile Court on November 28, 1978. A detention hearing for the child was held November 30, 1978. Gina Wilson personally appeared with counsel and waived the hearing. The juvenile court found DuYahn should be detained on the grounds his health and welfare might be endangered without further care. At the same time, the court set the deprived child hearing for January 31, 1979, at 1:30 p.m. Gina Wilson and her counsel were present at the detention hearing and received actual notice of the setting. The petition was amended to request that DuYahn be found a deprived child and that the court sever the rights of the parents, Gina Wilson and Alfred Bridgeman. A process server attempted to obtain service of process on Gina Wilson at her mother's home at 3216 Delavan, Kansas City, Kansas. Mrs. Wilson was not present, so the summons and amended petition were left at the home with Anita Walker on January 25, 1979. Anita is Gina Wilson's fifteen-year-old sister.

The severance hearing was held as scheduled. Neither Gina Wilson nor her appointed attorney, Paul Dent, appeared. However, on January 30, 1979, the court appointed another attorney, Maurice Ryan, to represent her. Mr. Ryan appeared although he had not conferred with Gina Wilson. Iris Walker appeared personally and with counsel and attempted to intervene. The court declared she was not a party in interest and denied her request. She was, however, permitted to be present and was allowed to testify for the State.

The court found DuYahn Walker to be a deprived child and took the matter of severance under advisement. On February 6, 1979, parental rights were severed. Both Gina Wilson and Iris Walker appealed the order. On November 3, 1979, Gina Wilson filed a motion in the Court of Appeals to set aside the default judgment and stay the briefing timetable. She also requested an evidentiary hearing on the matter of jurisdiction. The motions were denied on November 15, 1979.

On November 29, 1979, the Court of Appeals ordered the case remanded to the district court for an evidentiary hearing to determine whether the trial court had jurisdiction over Gina Wilson. Hearings were held and testimony was presented on February 29, March 26 and April 3, 1980. On April 24, 1980, the trial court advised the Court of Appeals it had proper jurisdiction

over Gina Wilson at the deprived child hearing. Judge Mikesic's findings included the following statements:

"There is no dispute that Gina Wilson lived at the 91st Street address . . . . .

. . . . .

"(1) On November 30, 1978, Gina Wilson appeared in person in Juvenile Court and received actual notice of the trial setting scheduled on January 31, 1979. Since DuYahn Walker was placed in the custody of S.R.S., Gina Wilson also knew that custody of the child was at issue. (2) That in addition to the voluntary appearance and actual notice at the detention hearing there was good personal service pursuant to K.S.A. 60-304 when process was served on Anita Wilson at the Delavan address; (3) That there was substantial compliance with the provisions of K.S.A. 38-810a(2) residential service when the process was served on Anita Wilson as Gina Walker stated this is the address she could be contacted; (4) Gina Wilson moved from the home of 91st Street, in the early part of January, 1979, and moved to St. Louis until at least February, 1979, and perhaps as long as until September, 1979, and therefore, service at the 91st Street address would not have been possible; and (5) counsel for Gina Wilson failed to raise the issue of jurisdiction at the adjudication proceeding prior to the court's entering of judgment.

"In essence, it is the court's finding that Gina Wilson knew of the trial and simply chose to leave town and avoid the proceedings.

"I find that the court had proper jurisdiction in this case for the reasons set out above."

The first issue on appeal is whether the trial court had jurisdiction over Gina Wilson for the purpose of severing parental rights. This issue questions the validity of the service of process on Mrs. Wilson.

A parent's right to custody and control of his or her child is recognized as a fundamental liberty right protected by the Fourteenth Amendment of the U.S. Constitution. *In re Adoption of Steckman*, 228 Kan. 669, 620 P.2d 319 (1980). That constitutional right is safeguarded by K.S.A. 1980 Supp. 38-820, which provides:

"No order or decree permanently depriving a parent of his or her parental rights in a deprived child under subsection (c) of K.S.A. 1978 Supp. 38-824, shall be made unless the court has jurisdiction to enter a child custody determination in accordance with K.S.A. 1978 Supp. 38-1303 and such parent is represented by counsel and present in the district court or has been served with summons. The judge of the district court shall assign an attorney to any such parent who is unable to employ counsel and may award a reasonable fee to said counsel to be paid from the general fund of the county."

K.S.A. 1980 Supp. 38-810a provides the different methods of service of summons to be given the parent. That statute states:

"(a) All summons, notices and other process of the court for proceedings pursuant to the juvenile code shall be served in accordance with this section.

"(b) The court shall direct the method of service of summons, notice of hearings and other process from among the following applicable alternatives:

"(1) *Personal Service.* Personal service is completed by delivering a copy of the process personally to the person named therein;

"(2) *Residential Service.* Residential service is completed by leaving a copy of the process in a conspicuous place at the usual place of residence of the person named therein at least forty-eight (48) hours prior to the hearing for which the summons, notice or other process is being issued;

"(3) *Restricted Mail Service.* Service by restricted mail, as defined by K.S.A. 60-103, is completed upon mailing;

"(4) *Service by Publication.* Service by publication is completed by publishing a copy of the process once a week for two consecutive weeks in some newspaper authorized to publish legal notices;

"(5) *Service Upon Confined Parent.* If it appears that a parent of a child who is the subject of a juvenile proceeding is confined in a state penal institution, state hospital or other state institution, service shall be made by restricted mail to both the confined parent and to the person in charge of the institution. It shall be the duty of the person having charge of the institution to confer with the parent, if the parent's mental condition is such that a conference will serve any useful purpose, and to advise the court in writing as to the wishes of such parent with regard to said child; or

"(6) *Oral Notice.* Oral notice may be permitted by the court for giving notice of a detention hearing only.

"(c) Summons issued for a hearing on a petition, as provided in K.S.A. 1978 Supp. 38-817, shall be accompanied by a copy of the petition or shall state all information required to be included in the petition.

"(d) When personal service or residential service of process is directed, such process shall be served by a juvenile probation officer, the sheriff or any other person appointed by the court for such purpose. The person serving the process shall inform the court of the time and manner of service.

"(e) If any person summoned and given notice of a hearing shall fail without reasonable cause to appear and abide the order of the court, such person may be proceeded against for contempt of court."

K.S.A. 1980 Supp. 38-810a requires that the trial court direct the method of service of summons from the alternatives provided. The statute also requires the person serving the process to inform the court of the time and manner of service. Neither of the above requirements were accomplished in this case. Richard Golubski, process server for the Wyandotte County District Court, testified he went to the home of Iris Walker at 3216 Delavan, believing he could locate Gina Wilson at that address. He testified he intended to personally serve Mrs. Wilson with the summons. Golubski could not recall the event, but the testimony of Anita Walker reveals Golubski asked Anita whether Gina was home and upon receiving a negative response, he instructed Anita to have Gina

call him. Later, he returned to Iris Walker's home and, finding no one at home, placed the summons between the doorknob and doorframe, where it was found by Anita. The parties agree that personal service was not obtained on Mrs. Wilson; however, appellee claims Golubski's actions comport with the statutory requirements for residential service, K.S.A. 1980 Supp. 38-810a(*b*)(2).

The foregoing statute requires that a copy of the process be left at the "usual place of residence" of the person in question. The term "usual place of residence" is defined in K.S.A. 77-201 *twenty-fourth.*

"[T]he place usually occupied by a person. If such person has no family, or does not have his or her family with him or her, such person's office or place of business, or if such person has no place of business, the room or place where such person usually sleeps shall be construed to be such place of residence or abode."

The record reveals a wealth of evidence to support the claim that Gina Wilson's residence was at 2308 North 91st Street. Numerous witnesses testified to that effect and the trial court's letter of April 24, 1980, regarding the matter of jurisdiction recognized she lived at that address, but proceeded to hold there was substantial compliance with the statutory requirements of residential service and, therefore, service of process was valid. This reasoning is clearly erroneous. There is substantial evidence to support the finding that Gina Wilson's usual place of residence was at the 91st Street address. There is no evidence to support the trial court's finding that service of process was proper for the five reasons listed in the trial court's letter of April 24, 1980. Referring to each of those reasons in order of presentation, we note: 1) Oral notice is sufficient for the detention hearing only, K.S.A. 1980 Supp. 38-810a(*b*)(6); 2) personal service for proceedings pursuant to the juvenile code is to be accomplished by compliance with the requirements in K.S.A. 1980 Supp. 38-810a(*b*)(1), not K.S.A. 60-304; 3) where a party attempts residential service by leaving a copy of the process at the usual place of residence of the person to be served, the document cannot be left at a place other than the person's residence. *Threadgill v. Beard,* 225 Kan. 296, 590 P.2d 1021 (1979). In this case, the document was left at the home of Iris Walker, rather than at Mrs. Wilson's own home; 4) although service at the 91st Street address might not have been possible because Mrs. Wilson was out of town, the statute provides other

methods of service which could have been used in this case; 5) appellant's counsel's failure to object to the service pursuant to K.S.A. 60-212(h) does not waive the defense of insufficient process. Mrs. Wilson was not yet in court, nor does the record indicate she was aware counsel had been appointed to represent her. Had Maurice Ryan been in court representing his client who had been properly served, the failure to object to service of process might have been fatal to Mrs. Wilson's case. We find Gina Wilson did not receive sufficient service of process pursuant to any of the methods enumerated in K.S.A. 1980 Supp. 38-810a; therefore, the trial court did not have jurisdiction to order severance of Gina Wilson's parental rights.

Appellant Iris Walker contends the trial court erred by not allowing her to intervene in the severance hearing. Iris Walker appeared at the hearing on January 31, 1979, and attempted to intervene. The trial court overruled her request but did allow her to testify as a witness. The court refused to allow her counsel to examine witnesses, present witnesses, cross-examine the State's witnesses or raise objections. Iris Walker contends since she had the child from August, 1978, through November, 1978, she was custodian of the child, acting *in loco parentis* and she should have been granted standing to intervene in the severance hearing.

Appellant Walker cites this court to the several references to custodians, guardians and other interested persons found throughout the Juvenile Code. See K.S.A. 1980 Supp. 38-802(g)(1) and (3); 38-815; 38-815b(b) and (c); 38-816(a); 38-817; 38-821 and 38-834. She contends those references to other persons interested in the welfare of the child support her claim that a grandmother, as temporary custodian of a child, should be allowed to intervene in a parental severance hearing when her rights are not protected. Those general references to guardians, custodians, persons with legal custody of a child and other persons interested in the child's welfare do not provide the requisite authority for intervention by a grandmother in a hearing to determine whether a child is deprived and whether parental rights should be severed.

Appellant also relies on the following authority to support her intervention theory: *Smith v. Organization of Foster Families,* 431 U.S. 816, 53 L.Ed.2d 14, 97 S.Ct. 2094 (1977); *James v. McLinden,* 341 F. Supp. 1233 (D. Conn. 1969); *Graham v. Children's Services Division,* 39 Or. App. 27, 591 P.2d 375 (1979); *In*

*re B.G.,* 11 Cal. 3d 679, 114 Cal. Rptr. 444, 523 P.2d 244 (1974); *In Interest of K. S. K.,* 294 So. 2d 50 (Fla. Dist. Ct. App. 1974); *In re Interest of Herron,* 212 N.W.2d 474 (Iowa 1973). None of the foregoing cases provide direct authority for the intervention claim; however, the cases are offered to show the rights given to custodians of children who wish to have custody of the child in their care.

There are two major differences between the authorities cited by appellant and the situation at hand. Where the cases discuss those persons, other than natural parents, who have certain rights to the custody of children they have in their care, they deal with legal foster parents (*Smith v. Organization of Foster Families,* 431 U.S. 816, and *In re B. G.,* 11 Cal. 3d 679), or persons acting *in loco parentis* (*James v. McLinden,* 341 F. Supp. 1233, and *In re Interest of Herron,* 212 N.W.2d 474)—people who have assumed the duties of parenthood. Mrs. Walker cared for DuYahn on a temporary basis and while her ties to him are undoubtedly strong, her role is more as a temporary caretaker, rather than a person who has assumed the role of parent. Another distinction between the cited authorities and the case at hand is the very subject they embrace—the question of custody—and this difference goes to the heart of Mrs. Walker's claim. Appellant's wish to intervene in the deprived child hearing is based on her interest in the ultimate custody of the child. While custody of the child will eventually require determination, that is not the direct issue in a deprived child hearing. Mrs. Walker is not the parent whose rights to her child are in question. She is not the object of the court's action and, therefore should not be permitted to intervene.

Finally, Mrs. Walker's claim for intervention must be denied because she failed to comply with the provisions of K.S.A. 60-224. A motion to intervene must be properly served on the party pursuant to K.S.A. 60-205, accompanied by a pleading setting forth "the claim or defense for which intervention is sought." K.S.A. 60-224(*c*)(1).

*American States Ins. Co. v. Hartford Accident & Indemnity Co.,* 218 Kan. 563, 573, 545 P.2d 399 (1976), states:

"Whether a motion to intervene is allowed is normally a matter of judicial discretion. (Citation omitted.) It depends upon the concurrence of three factors: (1) Timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests."

See *Hukle v. City of Kansas City,* 212 Kan. 627, 512 P.2d 457 (1973).

The request to intervene was made orally the day of the severance hearing. A motion was not served on the party as provided for in K.S.A. 60-205; there was no timely application. Iris Walker did not have a substantial interest in the severance of Gina Wilson's parental rights. Although she cared for the child, she is more concerned with eventual custody. Intervention by Mrs. Walker as a party in the severance hearing would not have aided Mrs. Walker because she was not the object of the petition to sever. We hold the trial court did not err in denying Iris Walker's request to intervene.

The judgment of the trial court is reversed and the case is remanded for new trial on the issue of severance of Gina Wilson's parental rights. The judgment is affirmed on the issue of Iris Walker's right to intervene. The detention order of November 30, 1978, is to remain in effect until final determination of the deprived child hearing.