No. 60,914

Vincent Jones and Cynthia Jones, *Appellees,* v. Ted J. Bordman, and Barbara J. Flakus, and Dr. Joseph Lichtor, *Appellants.*

(759 P.2d 953)

Opinion filed July 8, 1988.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *John P. Gilman,* of the same firm, was with him on the brief for appellant Bordman.

*Margie J. Phelps,* of Phelps-Chartered, of Topeka, argued the cause and was on the briefs for appellant Lichtor.

*Elizabeth A. Kaplan,* of James R. Shetlar Law Offices, of Overland Park, argued the cause, and *James R. Shetlar,* of the same firm, was with her on the brief for appellees Vincent Jones and Cynthia Jones.

The opinion of the court was delivered by

Allegrucci, J.: The present case arises from a personal injury action in which the plaintiffs sought to exclude the testimony of defendant Bordman's proposed expert witness, Dr. Joseph Lichtor. The trial court granted the motion to exclude Dr. Lichtor's testimony, and the case is now before this court as an interlocutory appeal.

The plaintiffs, Vincent and Cynthia Jones, filed their petition on September 10, 1984, alleging that they had received personal injuries due to the negligent operation of the motor vehicles driven by the defendants, Ted J. Bordman and Barbara J. Flakus. During the course of the pretrial proceedings in the case, defendant Bordman named Dr. Joseph Lichtor as his expert witness. The plaintiffs sought, by subpoena duces tecum, to obtain

extensive documentary materials from Dr. Lichtor. The materials sought by the plaintiffs included all medical reports made by Dr. Lichtor for the past six years, Dr. Lichtor's income tax returns, and a list of all cases in which Dr. Lichtor served as an expert witness for the defendant's attorneys, the firm of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, Kansas. Both the defendant and Dr. Lichtor moved to quash the subpoena. A hearing was held on the motions to quash on March 24, 1987.

On March 25, 1987, the district judge found that the subpoena was proper and denied the motion to quash. The district court authorized the subpoena of materials previously produced by Dr. Lichtor in Case No. 85-C-4694, *Barnett v. Drees*, which was also pending in the Johnson County District Court. The district court also took judicial notice of the decision of Judge Marion Chipman in the *Barnett v. Drees* case and, in so doing, adopted the findings of that decision as the findings of the court in the present case. The district court further found that the "burden of proof has shifted to the defendant calling Dr. Joseph Lichtor as a witness to establish his competency to testify as a truthful witness." At the defendant's request, the district court certified an interlocutory appeal pursuant to K.S.A. 1987 Supp. 60-2102(b).

The findings and conclusions made by Judge Chipman in *Barnett v. Drees*, and as adopted by the trial judge in this case, are:

"1. Dr. Lichtor is a board-certified, licensed orthopedic surgeon.

"2. Dr. Lichtor spends approximately 75 to 90 percent of his professional time on medicolegal matters. The balance of his professional time is spent on medical research, medical writing, seeing private patients and related matters.

"3. Dr. Lichtor testifies in court on the average of two times per month. Approximately 90 percent of the time he testifies for the defendant.

"4. Approximately 75 percent of the medicolegal work performed by Dr. Lichtor is performed for the defendant.

"5. Dr. Lichtor also performs examinations in workers' compensation cases. Most of this work is for the plaintiff. However, he has also examined for certain employers or their insurance companies, including the United States Postal Service, various police departments and the Henry Wurst Company.

"6. The Court ordered Dr. Lichtor to produce all medicolegal reports in his possession for the years 1980 through October 1986. Dr. Lichtor produced 245 reports. He failed to produce an undetermined number of reports contained in the subject matter files he maintains."

Findings No. 7 through No. 12 consist of an analysis by the

court of the medical findings made by Dr. Lichtor as evidenced in the 245 reports subpoenaed by the plaintiffs. The court compared Dr. Lichtor's findings based upon who requested him to do so, the type of case, and the diagnosis.

"13. Exhibits '17' and '18' are medicolegal reports prepared for the plaintiff by Dr. Lichtor. They are the only reports that Dr. Lichtor acknowledges to have been prepared for the plaintiff. Exhibits '21,' '22' and '23' are acknowledged by Dr. Lichtor to have probably been prepared for the defendant. There are material differences in the tone, content and format between the reports prepared for the plaintiff and those prepared for the defendant. Examples of these differences include the failure of Dr. Lichtor to note anything about the physical agility of a plaintiff whom he is examining for the plaintiff. Dr. Lichtor notes the 'normal' agility of plaintiffs whom he examines for a defendant. Dr. Lichtor also refers to age and degenerative changes of the spine as normal when examining for the defendant. When examining for the plaintiff, he either omits references to x-ray findings or describes them as abnormal. These differences are best explained by the fact that one type of report was prepared for the plaintiff and the other for the defendant. The reports referred to herein are typical examples of the reports prepared by Dr. Lichtor.

"14. The deposition of Dr. Lichtor in this case was begun on Monday, August 25, 1986, and was continued after two hours. Plaintiff's counsel issued a subpoena for Dr. Lichtor for the completion of his deposition. Plaintiff retained the services of a process server, O.W. Boggess, to serve the subpoena. Mr. Boggess attempted to serve the subpoena on Tuesday, August 26, 1986, at approximately 6:30 p.m. at Dr. Lichtor's residence. Mr. Boggess rang the door bell. No one opened the door. Someone from inside the house, a man, asked who was at the door. Mr. Boggess identified himself and asked for Dr. Lichtor. The individual responded that Dr. Lichtor was not there and would not be back until late that night. The individual identified himself as Dr. Lichtor's father. Mr. Boggess recorded notes of this conversation upon returning to his car. He also recorded the license plate and description of an automobile in Dr. Lichtor's driveway. The automobile was owned by Dr. Lichtor and was the car he regularly drove to and from work. Dr. Lichtor testified that he had no knowledge of these events; that he did not identify himself as his father who is deceased; and that he knew of no one else who could have been at his house on the date and time in question. Dr. Lichtor's testimony concerning this incident is not credible. The testimony of Mr. Boggess is credible. The only reasonable conclusion which the Court, as the finder of fact, may draw from this testimony is that Dr. Lichtor was the person responding to the questions of Mr. Boggess and that Dr. Lichtor did not testify truthfully concerning this incident. Dr. Lichtor denied any knowledge of this incident at the hearing on his qualifications on February 17, 1987, and at the conclusion of his deposition on August 28, 1986. Dr. Lichtor's testimony cannot be attributed to a failure of memory or a simple lack of knowledge. Dr. Lichtor's testimony is the result of his intent to deceive the finder of fact.

"15. Dr. Lichtor testified, as he has in prior cases, that he is unaware of the amount of his income or the amount attributable to his medicolegal work. The Schedule 'C's' of Dr. Lichtor's tax returns for the years 1980 through 1985 were

introduced into evidence. Dr. Lichtor assisted in the preparation of these schedules and reviewed them prior to filing them. Notwithstanding that Dr. Lichtor had been cross-examined on this subject on repeated prior occasions, and in the deposition in this case, and at the hearing on his qualifications, Dr. Lichtor persisted in his denial of knowledge concerning his income and concerning the amount attributable to his medicolegal activities. His persistent denial of knowledge of these facts can only be attributed to his intent to deceive the finder of fact.

"16. Dr. Lichtor has written a book entitled, 'Understanding Personal Injuries in Tort Litigation.' This book sets forth Dr. Lichtor's opinions concerning the proper method of evaluation, diagnosis and treatment of injuries sustained in accidents. Dr. Lichtor sets forth standards for keeping medical records, for proper wording of diagnoses and for necessary elements of a diagnosis. Dr. Lichtor testified that these are standards he applies in his private practice and in his medicolegal work. However, Dr. Lichtor does not apply these standards in his private practice. Dr. Lichtor fails to keep records on certain patients and he regularly uses diagnostic terminology condemned in his book. A review of over 900 private patient charts kept by Dr. Lichtor fails to establish any effort by him to adhere to the diagnostic standards he requires in medicolegal matters."

Findings Nos. 17 and 18 deal with Dr. Lichtor's holding himself out as an expert on Abnormal Sick Behavior for Personal Gain (ASB). The court found a diagnosis of ASB is a psychological or psychiatric diagnosis and that Dr. Lichtor is not a qualified expert in that regard.

"19. The Court has observed Dr. Lichtor testify as an expert witness on a number of occasions. On these occasions, Dr. Lichtor's conduct in the courtroom and his manner of testifying has demonstrated an obvious disregard for scientific matters. In one case before this Court, he was testifying regarding the difference between objective findings and subjective findings in a personal injury case and the attorney asked him to testify as to what his observations were of the plaintiff. He commenced his testimony by saying, 'I observed that the plaintiff had dirty underwear.' There was no issue in the case regarding whether or not the plaintiff had dirty underwear. His comment was made solely for the purpose of trying to prejudice the jury. The Court has observed this witness in trial after trial and has concluded that the witness has no desire to be unbiased or fair but simply is there to further the cause of the party that employs him, regardless of what means he has to use.

"20. Dr. Lichtor has demonstrated a pattern over an extended period of time of testifying in an untruthful manner that is intended to deceive the finder of fact. This pattern of testifying has been demonstrated in other cases tried before this Court and was again demonstrated in the hearing on Dr. Lichtor's qualifications at which the Court acted as the finder of fact.

"21. Dr. Lichtor bases his conclusions to a substantial degree on what will advance the cause of his client and not on the facts in a particular case. The overwhelming statistical data derived from a review of the 245 reports produced by Dr. Lichtor, though not determinative, cannot be ignored. It cannot be a mere coincidence that Dr. Lichtor almost always reaches a conclusion favorable to his

client, whether it be a defendant in an automobile collision case or a plaintiff in a workers' compensation case.

"22. Dr. Lichtor applies different standards and criteria in reaching his conclusions when he examines for the defendant than when he examines for the plaintiff or when he treats a private patient.

"23. Dr. Lichtor's testimony will not assist the jury in its fact-finding mission and any probative value his testimony may have is outweighed by its prejudicial impact."

Additional facts will be stated and discussed as they are relevant to the issues in this appeal.

We first consider whether Dr. Lichtor has standing as an intervening party to perfect his appeal in this case. The plaintiffs contend that Dr. Lichtor does not have such standing. Plaintiffs first argue that Dr. Lichtor has an insufficient interest in the subject matter of the present personal injury action to qualify as a valid intervening party, and second, that Dr. Lichtor is not an intervening party since he failed to file a written motion to intervene.

Although the plaintiffs are correct in contending that Dr. Lichtor does not possess a right to intervene pursuant to K.S.A. 60-224(a), that is not the sole basis upon which a district court may permit a non-party to intervene in a civil proceeding. Under subsection (b) of the statute, a district court may allow permissive intervention "(1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." The decision of whether to grant or deny permissive intervention is wholly within the discretion of the district court. *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984); *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, 545 P.2d 399 (1976). See 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1913, pp. 375-80 (1986). In the present case, although Dr. Lichtor did not possess an interest relating to the subject of the action, his defenses against the subpoena and the exclusion of his testimony presented common questions of law and fact, which authorized the district court to utilize its discretion in determining whether to permit intervention.

A different matter, however, is presented by the failure of Dr. Lichtor to satisfy the procedural requirements for intervention. K.S.A. 60-224(c) provides, in part:

"*Motion to intervene and practice in intervention.* (1) A person desiring to

intervene shall serve a motion to intervene upon the parties as provided in K.S.A. 60-205. The motions shall state the grounds therefor, and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of this state gives a right to intervene."

In *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 722 P.2d 1093 (1986), the court upheld the denial of intervention where the intervening party had made only an oral motion to intervene, and had failed to file a motion to intervene upon the parties to the action. We stated:

"K.S.A. 60-224(c)(1) requires the party moving to intervene in an action to serve a motion upon the parties. The motion must state the grounds for intervention and be accompanied by a pleading setting out the claim or defense for which intervention is sought.

"A motion to intervene must be properly served on a party pursuant to K.S.A. 60-205, 'accompanied by a pleading setting forth the claim or defense for which intervention is sought.' K.S.A. 60-224(c)(1). *Wilson & Walker v. State*, 230 Kan. 49, 630 P.2d 1102 (1981)." 239 Kan. at 666.

In *Wilson & Walker v. State*, 230 Kan. 49, 630 P.2d 1102 (1981), we held that a non-party making only an oral motion to intervene failed to satisfy the requirements of the statute. We said:

"Finally, Mrs. Walker's claim for intervention must be denied because she failed to comply with the provisions of K.S.A. 60-224. A motion to intervene must be properly served on the party pursuant to K.S.A. 60-205, accompanied by a pleading setting forth 'the claim or defense for which intervention is sought.' K.S.A. 60-224(*c*)(1).

. . . .

"The request to intervene was made orally the day of the severance hearing. A motion was not served on the party as provided for in K.S.A. 60-205; there was no timely application." 230 Kan. at 55-56.

In the present case, Dr. Lichtor failed to make a written motion to intervene accompanied by a pleading setting forth the claim or defense for which intervention is sought; nor, as in *Wilson & Walker*, did he make an oral motion to intervene in the action. The record reveals that, at the March 24, 1987, hearing before the district court, an entry of appearance was made by Dr. Lichtor's attorney. The court stated at the opening of the hearing:

"THE COURT: Well, first of all, I am rather confused in that I'm not sure that there is standing for the doctor to be represented at this point in time, or for entry of appearance to be entered at this time, and I would like to hear counsel on that issue."

The plaintiffs' attorney then formally objected to Dr. Lichtor's attorney's entering an appearance in the case. Dr. Lichtor's

attorney stated that Dr. Lichtor possessed the right to oppose the subpoena "even though he is a nonlitigant." Dr. Lichtor's attorney failed to make any mention of intervention in the action and counsel's statement that Dr. Lichtor was "a nonlitigant" is inconsistent with an assertion that Dr. Lichtor was attempting to obtain intervenor status. The district court concluded:

"THE COURT: I will allow you to enter an appearance in this case for a very limited issue as it may relate to Dr. Lichtor's hearing as to his qualifications, but for no other purpose. If you want me to hear your motion to quash, I will be happy to hear that motion."

The plaintiffs formally objected to Dr. Lichtor's attorney's making even a limited appearance for the purpose of arguing her motion to quash. When Dr. Lichtor's attorney filed the "APPLICATION FOR PERMISSION TO TAKE AN INTERLOCUTORY APPEAL" with the Court of Appeals, in which Dr. Lichtor was characterized for the first time as an "intervenor," the plaintiffs again responded, objecting to Dr. Lichtor's presence as an intervening party in the interlocutory appeal. Contrary to the suggestions of Dr. Lichtor, the plaintiffs have never conceded Dr. Lichtor's status as a valid intervening party and have continually objected to any such appearance by Dr. Lichtor in this case.

Dr. Lichtor also argues that his original motion to quash the subpoena satisfies the requirements of K.S.A. 60-224(c)(1). The motion to quash has not been included in the record and is found only as an appendix to Dr. Lichtor's reply brief. The motion is titled, "LIMITED ENTRY OF APPEARANCE and MOTION TO QUASH SUBPOENA and/or MOTION FOR ORDER REQUIRING PAYMENT OF COSTS and/or MOTION FOR CONTINUANCE OF HEARING." The pleading refers to Dr. Lichtor as "movant and expert witness herein," not as an intervenor. The prayer for relief at the conclusion of the pleading contains no request for Dr. Lichtor to intervene in the present action. During the entire course of the pleading, no mention is made either of intervention or K.S.A. 60-224.

Not only has Dr. Lichtor failed to comply with K.S.A. 60-224(c)(1), which requires the service of a motion to intervene stating the grounds for intervention, accompanied by a pleading setting forth the claim or defense for which intervention is sought, the trial court never granted him permission to intervene

pursuant to K.S.A. 60-224(b). We therefore conclude that Dr. Lichtor is not an intervening party to the present litigation and he does not have standing to perfect this appeal. However, the issues which Dr. Lichtor attempts to raise are also raised by defendant Bordman. For that reason, we will consider Dr. Lichtor as an *amicus curiae* and consider his briefs and arguments accordingly.

We next consider the plaintiffs' challenge of defendant Bordman's standing to contest the issuance of the subpoena and to file the motion to quash. The plaintiffs argue that the statute governing the issuance of a subpoena of records of a business not a party to the litigation, K.S.A. 1987 Supp. 60-245a, permits only the non-party to object to the subpoena. We disagree. While 60-245a(b) authorizes the non-party to object to the production of the subpoenaed business records, there is nothing in the statute which prohibits a party from also opposing the subpoena by a motion to quash. The effect of the plaintiffs' argument would force a party opposing the granting of a subpoena of a non-party's business records to remain silent, even if the party possessed otherwise valid grounds for opposing the subpoena. K.S.A. 1987 Supp. 60-245a(b) merely provides express authority for the non-party to independently object to the production of the business records. There is nothing within this statute which requires a party to relinquish its right to oppose such a subpoena of documents under K.S.A. 1987 Supp. 60-245(b).

The plaintiffs also attack the certification by the district court of the present interlocutory appeal. The plaintiffs contend that ¶ 10 of the district court's journal entry, which certifies the present case as a valid interlocutory appeal, does not validly reflect the decision of the district court. The plaintiffs' attorney contends that his signature, which is attached to the journal entry, was added to the present version of the district court's journal entry without his knowledge or consent. According to the attorney for the plaintiffs, he submitted a journal entry with his signature, which did not contain the present version of ¶ 10 in which the court expressly certifies the case as proper for an interlocutory appeal. The plaintiffs' attorney states in his brief that his signature attached to his proposed journal entry was removed from that journal entry and attached, without his authorization, to another journal entry which contained the present version of ¶ 10 authorizing the taking of an interlocutory appeal.

Even assuming that the present version of the journal entry did not have the plaintiffs' attorney's prior express approval, the journal entry nonetheless does reflect the decision of the district court that the present case is a proper one for the taking of an interlocutory appeal. At the conclusion of the March 25, 1987, hearing in the district court, the attorney for defendant Bordman stated:

"MR. HASTY: Okay. Before the Court makes any other orders, we ask the Court to certify the orders you made yesterday with regard to the motion to quash, and today's order, for an immediate appeal and to stay all proceedings until that appeal is heard.

"THE COURT: I will be happy to, if that's what you would like. Be more than happy to do that. Draw the appropriate journal entry."

The plaintiffs' argument that that portion of the journal entry authorizing the taking of an interlocutory appeal does not validly reflect the decision of the district court is not supported by the record.

We next turn to the issues raised by defendant Bordman. He first contends that the district court erred in upholding the issuance of the subpoena of Dr. Lichtor's records on the ground that no objection had been filed to the subpoena within ten days. The defendant argues that the relevant statute does not require a response within ten days.

The defendant is technically correct. K.S.A. 1987 Supp. 60-245a(b) requires that a non-party opposing a subpoena duces tecum respond by written objection "within 10 days after the service of the subpoena or at or before the time for compliance, if the time is less than 10 days after service." However, as previously discussed in this opinion, this section governs only the right of the non-party subject to the subpoena. K.S.A. 1987 Supp. 60-245a does not prohibit a party from moving to quash a subpoena against a non-party. The time in which a party may respond to a subpoena for the production of documentary evidence is controlled by K.S.A. 1987 Supp. 60-245(b). This statute contains no explicit 10-day requirement, but merely requires that the motion be "made promptly and at or before the time specified in the subpoena for compliance therewith." In the present case, "the time specified in the subpoena for compliance therewith" cannot be determined since the plaintiffs have failed to include a copy of the original subpoena in the record on

appeal. The failure of defendant Bordman to respond to the subpoena within ten days, therefore, cannot serve as justification for the decision of the district court to deny the motions to quash the subpoena. This determination, however, does not resolve the issue of whether the district court erred in upholding the issuance of the subpoena.

The district court's decision that the issuance of the subpoena was proper was reached independent of its conclusion that there had been no objections filed to the subpoena within ten days. During the March 24, 1987, hearing, the court indicated that its determination that the subpoena was proper was not dependent upon the failure of the opponents of the subpoena to respond within ten days. The court stated: "I do not desire to get involved in the legal argument as to the time frame within which the objection was made and I do not believe it to be controlling in this particular case." We must therefore consider whether the district court committed error in finding that the plaintiffs could subpoena Dr. Lichtor's records and, based on that finding, denying the defendant's motion to quash.

The propriety of the subpoena of Dr. Lichtor's records turns upon the authority of a trial court to authorize the discovery of the records in question to support an attack upon the credibility of that witness.

Although no Kansas case appears to have addressed this issue, a review of decisions from other jurisdictions supports the conclusion that the district court erred in denying the motions to quash the subpoena in the present case. In *Allen v. Superior Court*, 151 Cal. App. 3d 447, 198 Cal. Rptr. 737 (1984), the court held that the trial court had erred in granting a subpoena duces tecum requiring a medical expert witness appearing for the defendant to produce documents relating to

"(1) records pertaining to his examination of real party and billing for the examination; (2) records indicating the sources of his income where examinations were made at the request of insurance companies or defense lawyers over the last five years; (3) records of any kind that would reveal what portion of his total income was from treatment of patients, as opposed to evaluation of persons for the defense during the last five years; (4) records related to prior depositions in cases over the past five years when he was asked by the defense to examine someone; (5) all reports of examinations and evaluations prepared at defense request over the past five years." 151 Cal. App. 3d at 449.

The court concluded that the party seeking the production of the documents

"made no showing that the information sought or substantially equivalent information could not be obtained through other means, such as by conducting a deposition without production of the records. Nonetheless, the court permitted disclosure. The court abused its discretion when it failed to require a less intrusive method of discovery.

"At deposition, the medical expert may be asked questions directed toward disclosing what percentage of his practice involves examining patients for the defense and how much compensation he derives from defense work. To show bias or prejudice, [the party seeking to obtain discovery by subpoena] need not learn the details of his billing and accounting or the specifics of his prior testimony and depositions. As petitioner points out, publications which index the testimony of medical units are available to real party. Exact information as to number of cases and amounts of compensation paid to medical experts is unnecessary for the purpose of showing a bias." 151 Cal. App. 3d at 453.

The court in *Allen* relied, in part, upon the decision of the Supreme Court of Texas in *Russell v. Young*, 452 S.W.2d 434 (Tex. 1970). In *Russell*, the Texas court rejected the granting of a broad subpoena of a proposed expert witness' records, where the sole purpose for the discovery of the records was for impeachment of that proposed expert witness. *Russell* was a workers' compensation case and, as in the instant case, the party employing the physician and the physician brought the mandamus action to order the trial judge to quash the subpoena. The subpoena duces tecum was defended on the ground it might show the doctor was a "plaintiff's doctor." In a later case, the Texas Supreme Court elaborated on its decision in *Russell*. In *Ex Parte Shepperd*, 513 S.W.2d 813 (Tex. 1974), the court stated:

"*Russell* presented an attempt at wholesale discovery of the private records of a non-party. Allowing discovery orders of that kind would permit witnesses to be subjected to harassment and might well discourage reputable experts from accepting litigation-related employment." 513 S.W.2d at 816.

The purpose of discovery is to determine the facts which are relevant to the issues in controversy. It is in theory a search for the relevant truth. The plaintiffs contend that the scope of discovery as defined in K.S.A. 1987 Supp. 60-226(b) is broad enough to permit the inspection of Dr. Lichtor's records for possible evidence showing bias and prejudice. K.S.A. 1987 Supp. 60-226(b) provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or

defense of any other party." We agree with plaintiffs that the test for permitting discovery under K.S.A. 1987 Supp. 60-226(b) is not whether the evidence sought is admissible, but whether it appears reasonably calculated to lead to the discovery of admissible evidence. The medical records in question pertain to persons who are not parties to this action and as such are not relevant and are, therefore, inadmissible. It does not follow that the wholesale discovery of these medical records is permissible because evidence may be discovered which might show bias and prejudice of the witness. Questions may be directed to the doctor through interrogatories or by deposition which would elicit the evidence plaintiffs seek to show prejudice and bias. It is proper to ask what percent of a physician's practice involves examining, diagnosing, and/or testifying for defendants, and what he is paid for such work; however, a showing of bias or prejudice does not require that the details of those medical reports be disclosed. The scope of discovery under K.S.A. 1987 Supp. 60-226(b) contemplates the full disclosure of the expert witness' opinion and the facts and basis for that opinion. It does not contemplate the discovery of the medical records of persons not a party to the lawsuit for the sole purpose of obtaining evidence which may show a bias or prejudice.

In the present case, the *sole* purpose for the discovery was to obtain evidence which could impeach Dr. Lichtor's character for veracity, even though the evidence subpoenaed was clearly inadmissible for that purpose, or to support the exclusion of Dr. Lichtor as a witness. We do not find that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." Thus, the subpoena of these records falls outside the scope of discovery permitted by K.S.A. 1987 Supp. 60-226(b). In addition, as noted above, the plaintiffs could have obtained the evidence sought through other less obtrusive means, such as by written interrogatories or deposition.

We next turn to the central issue in this appeal, which is whether the district court properly excluded the testimony of Dr. Lichtor as an expert witness. In excluding Dr. Lichtor's testimony, the district court relied directly upon the findings of Judge Chipman in *Barnett v. Drees*. Therefore, a discussion of the propriety of the exclusion of Dr. Lichtor as a witness in turn depends upon the correctness of the findings stated in that case.

Judge Chipman's decision in *Barnett v. Drees* addressed three separate points. First, the court concluded that Dr. Lichtor would not be permitted to testify as an expert witness "because he is not competent to testify." The court based its conclusion upon numerous occasions in which Dr. Lichtor's veracity was under question. Second, Judge Chipman also found that Dr. Lichtor did not possess the necessary qualifications to render psychological evaluations. Specifically, the court found that Dr. Lichtor was not qualified to diagnose a person as suffering from "Abnormal Sick Behavior for Personal Gain." Finally, Judge Chipman noted the failure of Dr. Lichtor to abide by orders of the court in prior litigation. The present issue revolves around the first, and apparently the main, basis upon which Dr. Lichtor was excluded as a witness: the conclusion that Dr. Lichtor had often violated his oath by making untruthful statements.

Although the district court stated in *Barnett v. Drees* that it was not basing its ruling upon "a decision about Dr. Lichtor's credibility," a review of the court's decision indicates that the primary basis for the exclusion of Dr. Lichtor as a witness was the numerous occasions of alleged untruthfulness by Dr. Lichtor. The district court expressly stated that Dr. Lichtor was able to understand the meaning of his oath, but that the alleged prior instances of untruthfulness indicated that he was unable to abide by his oath. The court stated: "Dr. Lichtor understands the meaning of his oath as a witness, but, for his own reasons he is unable or unwilling to abide by that oath. Such a witness is not competent to testify."

Every person is presumed competent to testify as a witness. The burden of establishing incompetency rests upon the challenger, and requires the demonstration of a statutory basis for the determination of incompetency. K.S.A. 60-407. *State v. Thrasher*, 233 Kan. 1016, 666 P.2d 722 (1983); *State v. Poulos*, 196 Kan. 253, 411 P.2d 694, *cert. denied* 385 U.S. 827 (1966). K.S.A. 60-417, which provides the basis upon which a person may be found incompetent to testify as a witness, states:

"**Disqualification of witness; interpreters.** A person is disqualified to be a witness if the judge finds that (a) the proposed witness is incapable of expressing himself or herself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or her, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth. An interpreter is subject to all the provisions of this article relating to witnesses."

In *State v. Thrasher,* we said:

"[I]n order for a witness to be disqualified, the trial court must be convinced the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury, or is incapable of understanding the duty of a witness to tell the truth." 233 Kan. at 1018.

In the present case, the district court made no finding that Dr. Lichtor was unable to express himself. In addition, the court expressly stated that Dr. Lichtor "understands the meaning of his oath as a witness." The statutory requirements for competence have thus been satisfied and the conclusion of the district court in the present case that Dr. Lichtor was not competent to testify was in error. The rationale offered by the court in *Barnett v. Drees* that Dr. Lichtor was "unable or unwilling to abide" by his oath is not a test for witness competence sanctioned by statute and, therefore, is not a permissible basis for disqualifying Dr. Lichtor under K.S.A. 60-417. By the express findings of the district court, Dr. Lichtor satisfies the statutory requirements of competence expressed in K.S.A. 60-407 and 60-417.

Although the district court attempted to exclude Dr. Lichtor as a witness on the grounds of incompetence, the test for incompetence used by the court was not the test sanctioned either by statute or by the decisions of this court. Rather, the essence of the district court's decision was that Dr. Lichtor should not be permitted to testify because he had made numerous untrue statements in the past. The position taken by the district court that prior false statements by a witness could serve as grounds for disqualification of the witness was rejected in *State v. Smallwood,* 223 Kan. 320, 574 P.2d 1361 (1978). In *Smallwood,* the appellant advocated a test of competence similar to that adopted in the present case.

"The appellant argues because Mr. Meeks lied under oath on several occasions prior to the trial, he was incapable of understanding his duty to tell the truth. This argument overlooks the purpose of K.S.A. 60-417(*b*). That provision concerns whether a person is mentally and intellectually able to recognize the moral and legal duty of a witness to tell the truth. *If* Mr. Meeks previously lied as a witness, such conduct demonstrates a failure *to comply* with his duty to tell the truth rather than a failure *to understand* or *recognize* it. Moreover, the transcript reveals Mr. Meeks was questioned concerning his concept of the truth and his duty as a witness to tell the truth. He clearly understood his duty as a witness." 223 Kan. at 327.

A potential witness is not disqualified under K.S.A. 60-417

because of prior instances of falsehood. Even assuming the district court was correct in its assessment of the prior statements made by Dr. Lichtor, this assessment could not serve as a basis for disqualifying Dr. Lichtor as a witness.

In addition, the district court in *Barnett v. Drees* and therefore the district court in the present case by adopting the findings of that court erred in utilizing evidence of specific instances of Dr. Lichtor's prior conduct to effectively conclude that Dr. Lichtor was not a credible witness. Despite the statements made by the district court in *Barnett v. Drees* that it was not basing its decision upon the credibility of the witness, the entire thrust of the court's decision was based upon its conclusion that Dr. Lichtor's alleged lack of veracity on prior occasions invalidated his competency to testify as a witness. The district court stated that its conclusion that Dr. Lichtor was not competent to testify was "based upon repeated and persistent *instances* in which Dr. Lichtor has testified untruthfully." (Emphasis added.) The veracity, or lack thereof, of Dr. Lichtor on specific prior occasions was, therefore, the core of the district court's decision. K.S.A. 60-422 provides in part: "As affecting the credibility of a witness . . . (d) evidence of specific instances of his or her conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible."

This issue was also addressed in *Smallwood*, where the appellant contended that he should be permitted to cross-examine a witness regarding prior false statements of the witness. The appellant argued that the trial court should have permitted the cross-examination because it was relevant to the witness' lack of veracity. 223 Kan. at 326. We rejected the argument, stating:

"This claim lacks merit. The testimony was inadmissible as specific instances of conduct relevant only as tending to prove a trait of character.

. . . .

"Thus, a witness's credibility may be attacked by showing the witness has character traits for dishonesty or lack of veracity, but those traits may only be proven by opinion testimony or evidence of reputation. Those traits may not be proven by specific instances of the witness's past conduct. [Citations omitted.] Since the two episodes concerning Mr. Meeks' prior testimony were nothing more than prior specific instances of his conduct, the trial court properly prevented the appellant from inquiring about them on cross-examination by applying the exclusionary rule provided in K.S.A. 60-422(*d*)." 223 Kan. at 326-27.

The final finding by the *Barnett v. Drees* court, that Dr.

Lichtor, on prior occasions, had disregarded directions from the trial court as to permissible subjects for testimony, did not independently justify the exclusion of Dr. Lichtor's testimony. The record fails to demonstrate that less stringent methods of limiting the extent of Dr. Lichtor's testimony would not be satisfactory. The district court possesses the power to limit a witness' testimony to admissible evidence; in addition, K.S.A. 60-237(b)(2) provides the court with authority to apply a variety of sanctions for the failure to comply with the discovery orders of the court. The court also possesses inherent discretionary power to punish the contemptuous disregard of its orders. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 673 P.2d 1126 (1983); see K.S.A. 20-1204a(a).

We, therefore, find that the district court's order excluding Dr. Lichtor as a witness was improper for two reasons. First, as discussed above, it utilized a standard for determining competence which is not sanctioned by statute. In addition, in applying that incorrect standard for the determination of competency, the district court relied upon evidence of specific instances of conduct, which is prohibited by K.S.A. 60-422(d). We, therefore, conclude that the district court committed error by prohibiting Dr. Lichtor from testifying as a witness.

The final issue raised by the defendants is whether the district court erred in taking judicial notice of the findings in *Barnett v. Drees*. While the district court might properly, based upon the evidence before it, permit Dr. Lichtor to testify subject to orders limiting his testimony to matters within the scope of his expertise, the issue remains whether the district court in the present case had the ability to take judicial notice of the findings of the district court in *Barnett v. Drees*.

The scope of judicial notice is defined by K.S.A. 60-409. Nothing within the statute authorizes a court to take judicial notice of the contested factual findings reached by another court. While a court may take judicial notice of the outcome of another proceeding, where that ultimate outcome possesses an independent legal significance (see *State v. Lowe*, 238 Kan. 755, 715 P.2d 404 [1986]), there is no authority for a trial court to take judicial notice of the factual conclusions reached in another court in another case.

Not only is there a lack of direct authority for the district

court's action in taking judicial notice of the *Barnett v. Drees* findings, but also the taking of judicial notice in the present case effectively contravenes Kansas law relating to collateral estoppel. In *McDermott v. Kansas Public Serv. Co.*, 238 Kan. 462, 712 P.2d 1199 (1986), we held that collateral estoppel, or issue preclusion, required mutuality; *i.e.*, the issue subject to preclusion must have arisen in a prior case in which both of the current parties were adequately represented. This court rejected the argument advanced by the appellee in *McDermott* that offensive collateral estoppel should be permitted so long as the party against whom collateral estoppel is sought remains the same in both cases. The court noted that, while a number of jurisdictions had discarded the requirement of an identity of both parties, the requirement of mutuality nonetheless remained the majority rule and was expressly endorsed as a requirement for collateral estoppel under Kansas law.

Thus, this court, in *McDermott*, rejected the argument that offensive collateral estoppel should be permitted so long as *the defendant* remains the same in both actions. Instead, the court adhered to the rule that collateral estoppel requires *both the plaintiff and the defendant* to have been parties to the prior litigation. In the present case, however, the effect of the district court's taking judicial notice of the findings reached in *Barnett v. Drees* precludes defendant Bordman from contesting the issue of the admissibility of Dr. Lichtor's testimony, even though *neither* the plaintiffs *nor* the defendants in the present action were parties in *Barnett v. Drees.*

Finally, Dr. Lichtor, citing several cases, argues that the taking of judicial notice in the present case deprives him of the due process of law. It is unnecessary to address the due process argument advanced by Dr. Lichtor based upon our conclusion that the taking of judicial notice in the present case was error. This conclusion is independent of Dr. Lichtor's due process argument and the issue is, therefore, not essential to a resolution of the present case. In addition, Dr. Lichtor has no interest in the issues being litigated between the parties in the present case nor does he have standing as an intervening party. We further note that Dr. Lichtor was presented with an opportunity to be heard with regard to the allegations made by the plaintiffs. The district court, during the course of the March 25 hearing, expressly

stated that it would give all parties "an opportunity to present any additional testimony or evidence that you would like regarding [Dr. Lichtor's] qualifications to testify in this case." The record fails to reveal whether Dr. Lichtor took advantage of that opportunity.

The judgment of the district court is reversed.