No. 48,709

STATE OF KANSAS, *Appellee,* v. STEPHEN F. SMALLWOOD, *Appellant.*

(574 P.2d 1361)

Opinion filed January 21, 1978.

*Craig Kennedy,* of Coombs, Lambdin, Kluge & Kennedy, Chartered, of Wichita, argued the cause, and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C. J.: This is an appeal in a criminal action from a jury verdict which found Stephen F. Smallwood (defendant-appellant) guilty of three counts of aggravated robbery (K.S.A. 21-3427); one count of unlawful possession of a firearm (K.S.A. 21-4204); and two counts of conspiracy (K.S.A. 21-3302).

Several specifications of error are asserted by the appellant. First he claims the trial court erred in refusing to grant his request for production of documents pursuant to K.S.A. 22-3213. Second he contends the trial court erred in allowing the admission of exhibits by the state on the ground they were irrelevant. Third he claims the trial court erred in limiting his cross-examination of the state's chief witness and in overruling his motion to suppress the testimony of this witness.

The essential facts are largely undisputed. On February 12, 1975, five armed men in ski masks robbed the Grove IGA grocery store in Wichita, Kansas, of approximately $5,200. The robbers also took a snub-nosed .38 pistol from the store manager, Larry L. Wolf, and $48 in cash and credit cards from a customer in the store, M. G. McIntosh. Larry Taylor, an employee of the store, was shot during the robbery.

Almost one month later on March 9, 1975, the Wichita Police Department stopped a pickup truck at 1:00 a.m. in the morning. Two pistols and a shotgun were immediately thrown from the truck and a man, later identified as the appellant, jumped from the truck and fled. Ray Meeks, Donald McQueen and Elmer Hardyway, Jr., were arrested and taken into custody. One of the pistols thrown from the truck was identified as the same gun taken in the Grove IGA robbery.

Several days after he was arrested Ray Meeks implicated the appellant together with Elmer Hardyway, Jr., Charles Hardyway and Donald McQueen in the commission of several robberies in the Wichita area. He was granted immunity from prosecution upon the condition he testify at the trials of these defendants. As a result of the information provided by Meeks the appellant was charged with the Grove IGA grocery store robbery and with conspiracy to rob the Pawnee Plaza Mall in Wichita.

Stated briefly, Meeks testified he and the appellant met with a man named Melvin V. Moody on March 4, 1975, to discuss the robbery of a coin collection to be shown at the Pawnee Plaza

Mall. Moody promised to provide a key to the building, while the appellant agreed to furnish the men he usually worked with.

Shortly before noon the next day Meeks saw the appellant and Elmer Hardyway, Jr. He stated the appellant told him he was getting ready "to meet the man, find everything out." Thereafter on March 8, 1975, the appellant accompanied by Meeks, Donald McQueen and Elmer Hardyway, Jr., went to the Pawnee Plaza Mall to familiarize themselves with the premises and finalize arrangements for the robbery of the coin collection to be shown on the mall.

Meeks further stated he drove with Donald McQueen and Elmer Hardyway, Jr., to the appellant's home early in the morning of March 9, 1975. The trio picked up the appellant together with the guns to be used in the robbery and were proceeding to the Pawnee Plaza Mall when they were apprehended by the police.

Meeks also related the details surrounding the Grove IGA grocery store as did numerous other witnesses introduced by the state.

The appellant made various unsuccessful motions concerning the testimony of Ray Meeks. Apparently after he was released from custody Meeks was interviewed by the assistant district attorney, Stephen M. Joseph, on March 20 and 21, 1975. Prior to the trial the appellant moved for the production of notes made by Mr. Joseph during the interviews. The trial court denied the motion. The appellant renewed the motion unsuccessfully at the trial. The appellant also moved to suppress Meeks' testimony claiming Meeks was incapable of understanding his duty as a witness to tell the truth pursuant to K.S.A. 60-417(b) and he also claimed Meeks' Fifth Amendment constitutional rights had been violated by the police after Meeks' arrest. These motions were denied.

Finally, the trial court limited the appellant's cross-examination of Ray Meeks concerning his ability to tell the truth on previous occasions.

The appellant was convicted as charged and sentenced to imprisonment as a habitual criminal for not less than 45 years nor more than his life. His motion for a new trial was denied and appeal has been duly perfected.

The appellant first contends the trial court erred in denying him

the opportunity to examine certain documents which he claims were a "statement" of the state's chief witness, Ray Meeks.

Prior to the trial, the appellant moved for discovery of a number of items including the following:

"5. Specifically, the written statement of Ray Meeks given to Assistant District Attorney Steve Joseph which Assistant District Attorney Joseph has characterized as 'his notes' although Ray Meeks has called the document in question 'his written statement'."

The trial court denied the appellant's motion to produce those notes as reflected in the journal entry:

"5. Assistant District Attorney Stephen M. Joseph informed the court that he interviewed Ray E. Meeks on March 20 and 21, 1975; that he made notes during this interview; and that Mr. Meeks has never read, signed, or otherwise approved those notes. Based on this statement, the court declined to order production of Mr. Joseph's notes but ordered that a copy of those notes be filed in camera for purposes of appeal."

At the trial the appellant again moved unsuccessfully for the production of Mr. Joseph's notes. He claimed Mr. Meeks had characterized the notes as his "written statement" and stated he believed he signed them.

K.S.A. 22-3213 provides in part:

"(2) After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement (as hereinafter defined) of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

.   .   .   .   .   .   .   .   .   .   .   .

"(4) The term 'statement,' as used in subsections (2) and (3) of this section in relation to any witness called by the prosecution means—

"(a) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement."

The definition of "statement" in K.S.A. 22-3213(4) is patterned after the definition of "statement" in the Jencks Act, 18 U.S.C., § 3500 (1970), as it was originally passed by Congress. That Act was subsequently amended to add grand jury testimony to the definition. This court has previously relied upon the construction

of the Jencks Act applied by the federal courts when questions have arisen under K.S.A. 22-3213. (See *State v. Stafford,* 213 Kan. 152, 158, 515 P.2d 769.) We do not depart from this practice here. Both parties agree *Goldberg v. United States,* 425 U.S. 94, 47 L.Ed.2d 603, 96 S.Ct. 1338, controls the disposition of this claim.

In *Goldberg,* the accused sought production at trial of a government lawyer's notes made during interviews with a government witness. The witness testified the lawyer's notes were probably read back to him from time to time during the interviews and he confirmed their accuracy or made corrections. The Supreme Court reversed the trial court's ruling the notes were "work product" stating:

"We hold that a writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness that has been 'signed or otherwise adopted or approved' by the Government witness is producible under the Jencks Act, and is not rendered nonproducible because a Government lawyer interviews the witness and writes the 'statement'. . . ." (p. 98.)

The court then remanded the case to the trial court to determine whether the lawyer's notes constituted a "statement" within the meaning of the Jencks Act. The court suggested several issues to be resolved by the trial court including the determination whether the prosecutor's notes were actually read back to the witness and whether he adopted or approved them. The Supreme Court notes:

"19. Every witness interview will, of course, involve conversation between the lawyer and the witness, and the lawyer will necessarily inquire of the witness to be certain that he has correctly understood what the witness has said. Such discussions of the general substance of what the witness has said do not constitute adoption or approval of the lawyer's notes within § 3500 (e)(1), which is satisfied only when the witness has 'signed or otherwise adopted or approved' what the lawyer has written. This requirement clearly is not met when the lawyer does not read back, or the witness does not read, what the lawyer has written." (pp. 110-111.)

Here the state contends Mr. Joseph's notes were not a "statement" within the meaning of K.S.A. 22-3213(4)(*a*), because Mr. Meeks did not sign or otherwise adopt or approve what Mr. Joseph wrote during the interview. Further, the state argues the notes were not a substantially verbatim transcription of Mr. Meeks' oral statements. We agree.

This court has reviewed Mr. Joseph's notes taken in longhand in their entirety. Clearly they were not a substantially verbatim

transcription of the conversation. We hold because Mr. Joseph did not read back his notes to Mr. Meeks and Mr. Meeks did not read what Mr. Joseph wrote, Mr. Meeks did not approve or adopt those notes and they were not a "statement" within the meaning of K.S.A. 22-3213.

The appellant next claims his rights were prejudiced when the state was allowed to introduce both testimony and exhibits which pertained only to other individuals also charged with the same crimes with which he was charged.

The appellant lists twelve different exhibits which were introduced together with testimony of officers and an expert to prove Elmer Hardyway, Jr., Charles Hardyway and Donald McQueen were involved in the Grove IGA robbery. None of the evidence or testimony related to the appellant. He argues this evidence was introduced by the state in order to show Ray Meeks was telling the truth about Elmer Hardyway, Jr., Charles Hardyway and Donald McQueen and therefore was also telling the truth about his involvement in the robbery. The general rule is the admissibility of physical evidence is within the sound discretion of the trial court and is to be determined on the basis of its relevance in connection with the accused and the crime charged. (*State v. Hernandez,* 222 Kan. 175, 563 P.2d 474; *State v. Jakeway,* 221 Kan. 142, 558 P.2d 113; and *State v. Boone,* 220 Kan. 771, 556 P.2d 880.)

In *State v. Donahue,* 218 Kan. 351, 543 P.2d 962, our court allowed the introduction, over objection, of physical objects belonging to codefendants stating:

"It cannot be doubted that the victims' descriptions of the shoes, hat and gun, and their in-court identification of these exhibits strongly corroborated their identification of the defendant. The exhibits were relevant and of probative value. . . . The shoes corroborated the victims' identification of Garrett [the codefendant] as one of the assailants and in turn added credence to their identification of the defendant as another assailant. . . ." (p. 356.)

(See also *State v. Wasinger,* 220 Kan. 599, 556 P.2d 189.)

Here the use of such evidence was entirely proper. The exhibits and testimony corroborated Mr. Meeks' testimony that the Hardyway brothers and McQueen were involved in the charged offenses. This, in turn, added credence to Mr. Meeks' testimony the appellant was a member of the robbery team. The exhibits were relevant and had some probative value.

The appellant also complains the trial court erred in limiting his cross-examination of Ray Meeks.

During his cross-examination of Mr. Meeks the appellant attempted to examine the witness concerning his testimony under oath at two preliminary hearings when Mr. Meeks allegedly admitted he had not told the truth. One of these occasions dealt with conversing about the case to the district attorney during a recess after being admonished to refrain from discussion. While Mr. Meeks initially denied such behavior, he later admitted in his testimony he had discussed the case during the break. The other instance involved testimony by Mr. Meeks in which he stated he had been telephoned rather than subpoenaed to appear. The trial court refused to allow cross-examination stating these matters were of a collateral nature and not proper cross-examination for impeachment purposes.

The appellant now contends it was error for the trial court to limit this cross-examination because it affected the witness's credibility. This claim lacks merit. The testimony was inadmissible as specific instances of conduct relevant only as tending to prove a trait of character.

K.S.A. 60-420 provides:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

Limitations on the admissibility of evidence affecting the credibility of a witness under K.S.A. 60-422 include in part:

"As affecting the credibility of a witness . . . (c) evidence of traits of his or her character other than honesty or veracity or their opposites, shall be inadmissible; (d) evidence of specific instances of his or her conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible."

In substance K.S.A. 60-422(c) disallows proof of general bad or good character and limits character evidence impeaching or supporting a witness's credibility to the traits of honesty or veracity or their opposites. K.S.A. 60-422(d), on the other hand, limits the manner of proving such character traits as affecting the credibility of a witness by disallowing evidence of specific instances of the witness's conduct. This limits K.S.A. 60-446, which allows proof of character by opinion testimony and evidence of reputation.

Thus, a witness's credibility may be attacked by showing the witness has character traits for dishonesty or lack of veracity, but those traits may only be proven by opinion testimony or evidence

of reputation. Those traits may not be proven by specific instances of the witness's past conduct. (See *State v. Hall,* 220 Kan. 712, 716, 556 P.2d 413; *State v. Humphrey,* 217 Kan. 352, 364, 537 P.2d 155; and *State v. Taylor,* 198 Kan. 290, 424 P.2d 612.) Since the two episodes concerning Mr. Meeks' prior testimony were nothing more than prior specific instances of his conduct, the trial court properly prevented the appellant from inquiring about them on cross-examination by applying the exclusionary rule provided in K.S.A. 60-422(*d*).

Finally, the appellant claims the trial court erred in overruling his motion to suppress the testimony of Ray Meeks. Specifically he contends Mr. Meeks should have been disqualified as a witness because he was incapable of understanding his duty to tell the truth. Further he claims Ray Meeks' constitutional rights were violated when the statements were taken.

Under K.S.A. 60-407 every person is qualified to be a witness. Our court discussed this statute in *State v. Poulos,* 196 Kan. 253, 411 P.2d 694, *cert. denied* 385 U.S. 827, 17 L.Ed.2d 64, 87 S.Ct. 63, where we said:

". . . Under this section, a witness is presumed to be competent to testify. His incompetency, therefore, must be challenged and the burden of establishing incompetency rests on the challenger. . . ." (p. 263.)

Conversely, K.S.A. 60-417(*b*) disqualifies any person who is incapable of understanding his duty as a witness to tell the truth.

The appellant argues because Mr. Meeks lied under oath on several occasions prior to the trial, he was incapable of understanding his duty to tell the truth. This argument overlooks the purpose of K.S.A. 60-417(*b*). That provision concerns whether a person is mentally and intellectually able to recognize the moral and legal duty of a witness to tell the truth. *If* Mr. Meeks previously lied as a witness, such conduct demonstrates a failure *to comply* with his duty to tell the truth rather than a failure *to understand* or *recognize* it. Moreover, the transcript reveals Mr. Meeks was questioned concerning his concept of the truth and his duty as a witness to tell the truth. He clearly understood his duty as a witness.

The second ground advanced by the appellant in support of his motion to suppress Mr. Meeks' testimony is that Meeks' Fifth Amendment privilege against self-incrimination was violated. He cites *Bradford v. Johnson,* 354 F. Supp. 1331 (E.D. Mich. 1972)

and *United States v. Payner,* 434 F. Supp. 113 (N.D. Ohio 1977) as precedent. Neither of these cases is controlling under the facts presented here.

In *Bradford,* the court recognized a petitioner for habeas corpus relief had no standing to raise the right of the prosecution witness to be free from self-incrimination; however, it found the due process clause offers protection to defendants incriminated by a witness who was grossly tortured to gain the incriminating statements. The transcript and arguments in the case at bar reveal Mr. Meeks was never physically or mentally tortured, but voluntarily gave his statements after he was granted immunity.

In *Payner,* the court extended the due process exclusionary rule to a taxpayer who was charged with knowingly and wilfully falsifying his return. Certain documents had been seized from the briefcase of a vice-president of a bank in which the taxpayer had an account in order for the government to press charges. The court allowed the defendant to object to the unlawful search and seizure to deter the government from engaging in purposeful, bad faith and outrageous constitutional violations.

We find the reasoning in *United States v. Le Pera,* 443 F.2d 810 (9th Cir.), *cert. denied* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971), more convincing. There the co-conspirator witnesses were granted immunity, and the court stated in answer to the appellant's challenge against the admission of his co-conspirators' testimony the following:

"The right against self-incrimination, however, is personal to the witness. Bowman v. United States, 350 F.2d 913, 915 (9th Cir. 1965). And only the witness may assert it or waive it. The appellant has no standing to assert the witnesses' privilege. United States ex·rel. Berberian v. Cliff, 300 F. Supp. 8 (E.D. Pa. 1969). *See* Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1967). Furthermore, since the witnesses in question were all granted immunity, there is no possible violation of their privilege, and, therefore, Le Pera cannot complain, whether he has 'standing' or not." (p. 812.)

Our decisions of *State, ex. rel., v. Koscot Interplanetary, Inc.,* 212 Kan. 668, 512 P.2d 416, and *State v. Addington,* 158 Kan. 276, 280, 147 P.2d 367, are in accord.

Thus, Mr. Meeks' Fifth Amendment privilege was personal to him and the appellant lacked standing to assert it. Furthermore Mr. Meeks was granted immunity and was not prosecuted; therefore, he was never compelled to incriminate himself and his Fifth Amendment privilege was not violated.

The judgment of the lower court is affirmed.