No. 66,932

STATE OF KANSAS, *Appellee,* v. DARVIN K. LEWIS, *Appellant.*

(847 P.2d 690)

Opinion filed March 5, 1993.

*Brenton G. Lonker,* of Shultz, Webb & Lonker, Chtd., of Wichita, argued the cause and was on the brief for appellant.

*Debra S. Byrd,* assistant district attorney, argued the cause, and *Rachelle Worrall Smith,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Defendant appeals his jury trial convictions of attempted rape (K.S.A. 1992 Supp. 21-3301, K.S.A. 21-3502) and kidnapping (K.S.A. 21-3420).

The complaining witness, T.J., age 16 years, testified that on February 27, 1991, she was walking along a Wichita street when she was accosted by the defendant and forced into his automobile. While restraining her in a headlock, defendant drove to his residence on Kansas Avenue. There, T.J. was forced into the house, where defendant attempted to rape her. A few minutes later defendant told her she could leave and she did.

Defendant testified he was home at the date and time in question, working on his automobile. While so engaged, he was approached by T.J., who asked if she could use his telephone. He agreed; T.J. used the telephone and left. No sexual activity of any type occurred, consensual or otherwise.

For his first issue on appeal, defendant argues the trial court abused its discretion in refusing to permit four defense witnesses to testify as to the reputation of the complaining witness as to veracity. We agree. In *State v. Smallwood,* 223 Kan. 320, 574 P.2d 1361 (1978), we discussed the admission of evidence relevant to the credibility (or lack thereof) of a witness. This discussion and the factual framework on which it was based is as follows:

"During his cross-examination of Mr. Meeks the appellant attempted to examine the witness concerning his testimony under oath at two preliminary hearings when Mr. Meeks allegedly admitted he had not told the truth. One of these occasions dealt with conversing about the case to the district attorney during a recess after being admonished to refrain from discussion. While Mr. Meeks initially denied such behavior, he later admitted in his testimony he had discussed the case during the break. The other instance involved testimony by Mr. Meeks in which he stated he had been telephoned rather than subpoenaed to appear. The trial court refused to allow cross-examination stating these matters were of a collateral nature and not proper cross-examination for impeachment purposes.

"The appellant now contends it was error for the trial court to limit this cross-examination because it affected the witness's credibility. This claim lacks merit. The testimony was inadmissible as specific instances of conduct relevant only as tending to prove a trait of character.

"K.S.A. 60-420 provides:

" 'Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility.'

Limitations on the admissibility of evidence affecting the credibility of a witness under K.S.A. 60-422 include in part:

" 'As affecting the credibility of a witness . . . (c) evidence of traits of his or her character other than honesty or veracity or their opposites, shall be inadmissible; (d) evidence of specific instances of his or her conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible.'

In substance K.S.A. 60-422(c) disallows proof of general bad or good character and limits character evidence impeaching or supporting a witness's credibility to the traits of honesty or veracity or their opposites. K.S.A. 60-422(d), on the other hand, limits the manner of proving such character traits as affecting the credibility of a witness by disallowing evidence of specific instances of the witness's conduct. This limits K.S.A. 60-446, which allows proof of character by opinion testimony and evidence of reputation.

"Thus, a witness's credibility may be attacked by showing the witness has character traits for dishonesty or lack of veracity, but those traits may only be proven by opinion testimony or evidence of reputation. Those traits may

not be proven by specific instances of the witness's past conduct. (See *State v. Hall,* 220 Kan. 712, 716, 556 P.2d 413 [1976]; *State v. Humphrey,* 217 Kan. 352, 364, 537 P.2d 155 [1975]; and *State v. Taylor,* 198 Kan. 290, 424 P.2d 612 [1967].) Since the two episodes concerning Mr. Meeks' prior testimony were nothing more than prior specific instances of his conduct, the trial court properly prevented the appellant from inquiring about them on cross-examination by applying the exclusionary rule provided in K.S.A. 60-422(d)." 223 Kan. at 326-27.

See *Herbstreith v. de Bakker,* 249 Kan. 67, 76-77, 815 P.2d 102 (1991).

The proffers of the testimony of the four witnesses who were excluded indicates they were acquaintances of T.J., the complaining witness, and they would have testified she had a reputation for having a lack of veracity or, as they put it, for being a liar.

The trial court excluded the testimony on a number of grounds. The trial court disapproved of the former residence of some of the witnesses, stating:

"THE COURT: Tell you one thing, you got a problem with people that stay at the Courtesy as many times as I have had them on different cases here. I would suggest that maybe you need to look into the Courtesy. It's a fact I'll take into consideration in deciding. I think the question does she work has some significance, too. . . .

. . . .

". . . All I'm saying is I'm giving you a suggestion so that if what I've just said affects my ruling, you may have a better understanding. It also goes to the group of the people that you're using to attack somebody, and it may be just the same type I'm not going to believe them. I've got to decide whether witnesses that say—that occupy the Courtesy Inn, with all the information that I've run into about the Courtesy Inn on criminal trials I've had, whether or not I would be right in allowing them to present themselves to a jury to judge anybody any time."

The trial judge, from the above statement and others, made it clear he disapproved of the lifestyles and socio-economic status of the witnesses. One of the witnesses testified that he, the other reputation witnesses, and T.J. were "street people." All were young. The trial judge indicated that by virtue of their age and prior emotional involvement with T.J., they were apt to be "spiteful" and that he "doubt[ed] their motive."

All of these expressions go to the weight the trial court felt should be afforded to such witnesses' testimony and have no bearing on the admissibility of such testimony.

Also, the trial court expressed the opinion that evidence relative to T.J.'s lack of veracity would be violative of the rape shield statute (K.S.A. 1992 Supp. 21-3525), which provides in pertinent part:

"(2) Except as provided in subsection (3), in any prosecution to which this section applies, evidence of the complaining witness' previous sexual conduct with any person including the defendant, shall not be admissible, and no reference shall be made thereto in the presence of the jury, except under the following conditions . . . ."

The trial court made the following comments on the rape shield statute and the issue of T.J.'s veracity:

"I think what the defense would like to do because that—the purported rape shield that used to be in 60 was taken out and put in—I think the section is 35—21-3525. If not, I'm sure you know what I'm referring to. And I think what you're doing is using an indirect attempt to get around what you can't get around in a direct way. And I think—

"MS. PARKER [Prosecutor]: Is the Court speaking of the rape shield statute?

"THE COURT: Uh-huh, right, and whatever that number is. And I had it in mind, but I read so much last night and I got too tired to just get it in correct form probably. But, anyhow, I feel that that is an attempt I can understand, but I can't allow it. And the point is that rape shield statute was passed specifically and taken out of 60. It used to be in there, and the legislature saw the need to do it. And I think it was the legislative intent that we not be trying a rape case on—or make it where it's a—the main issue is veracity. There's methods to do that and—if you can find a way to do it by cross-examination and make it an issue, proper or not. But I'm not going to try the issue of veracity, which I think is connected with the issue of morality, in trying this kidnapping and attempted rape or the lesser included charge here. I think that I have the absolute discretion and the obligation to make this determination.

"It's not something that I said yesterday in the record and don't feel that I found case law and statutory interpretation last evening, spending a lot of my time. I probably will intend on the basis of my ruling—not during the trial, but I'll make a record so the Supreme Court can have an idea of the happenings yesterday in this building concerning this case. I just don't think it has any probative value with me in the motive and even the testimony as was given of whether or not—and what we do is we'll have the doggone jury back there in deliberation arguing more about the issue of veracity than the main thing of the case. And then I don't think it adds or—takes the testimony as it stands or adds or takes away from the principal issues in that case, which is a reason that the Court can say that such evidence won't be used of this nature that I've heard so far."

One of the witnesses herein was the boyfriend (or former boy-friend) of T.J. His proffered testimony was not as to prior sexual activities of T.J., however, but as to her reputation for lack of veracity.

The rape shield statute is inapplicable to the issue herein, and the trial court erred in holding otherwise.

The trial court erred, also, in excluding the evidence on the basis that it did not want the jury diverted from its proper purpose of determining whether defendant was or was not guilty of the crimes charged by "arguing more about the issue of veracity." Credibility was everything in this case. No evidence corroborated either T.J.'s or defendant's versions of the events. Guilty verdicts could be obtained herein only if T.J.'s testimony was believed in all significant respects. Thus, the State's whole case rested on T.J.'s testimony being believed by the jury.

If the jury had been permitted to hear and consider evidence relevant to T.J.'s reputation for lack of veracity and afford to it such weight as it deemed to be appropriate, a different verdict may have been reached. Under the circumstances herein, we conclude the exclusion of such evidence constitutes reversible error requiring a remand for new trial. By so holding, we are not stating that a sufficient foundation was laid for the testimony of each of the four witnesses. For our purposes, it was sufficient to consider the proffered testimony collectively and find its exclusion to be erroneous.

We further conclude that upon remand this case should be assigned to a different judge for all further proceedings.

A number of other issues are raised, including such matters as the alleged improper restriction of voir dire, refusal to excuse a juror for cause, judicial misconduct during trial, exclusion of alibi witness testimony, and admission of prior crimes evidence under K.S.A. 60-455. We have carefully reviewed these other issues and conclude they are tied to and interwoven with the particular circumstances existing in the trial herein. Inasmuch as we are reversing the convictions and remanding the case for retrial under a different judge, there is nothing to be gained from discussing each such issue and determining whether the complained-of matter constituted error or abuse of judicial discretion.

The judgment is reversed, and the case is remanded for further proceedings.