(304 P.3d 346)
No. 106,002

STATE OF KANSAS, *Appellee*, v. ROY WETRICH, *Appellant*.

Opinion filed June 14, 2013.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Clayton J. Perkins*, legal intern, *Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and SCHROEDER, JJ.

HILL, J.: In this criminal appeal, Roy Wetrich contends the district court erred when it prevented him from presenting evidence that his wife had lied about him in a statement she gave the police. Kansas law allows a witness' credibility to be attacked by presenting

evidence that the witness has a character trait for dishonesty. That trait may not be proved by evidence of a specific instance of conduct but may be proved only by opinion testimony. Because Wetrich sought the admission of evidence he claimed would prove his wife had lied to the police, a specific instance, we hold the district court correctly denied its admission to show she was lying on this occasion.

Wetrich also asks us to find a sentencing error because he was not allowed to contest his criminal history. The sentencing statutes now permit an offender to challenge a criminal history that has been previously established but when doing so, the offender has the burden to prove his or her criminal history by a preponderance of the evidence. We hold the district court incorrectly denied Wetrich an opportunity to contest his criminal history based upon the doctrine of collateral estoppel. We affirm Wetrich's convictions but vacate his sentence and remand for a new sentence, thus giving Wetrich an opportunity to contest his criminal history.

*Evidence of domestic violence arises in this case.*

In early 2009, Suzanne Galbraith lived with her husband Roy Wetrich and their two children in Olathe. The two offer different stories about what happened. Galbraith testified that on March 7, 2009, she and Wetrich got into a disagreement in their upstairs bedroom. Wetrich began threatening her and banging her against the wall. According to Galbraith, she got away from Wetrich and ran downstairs. When Galbraith refused to come back upstairs, Wetrich came after her. Galbraith then ran out the back door and down the street. Once outside, Galbraith testified she telephoned a friend, Al Wymer, and asked him to come over and calm Wetrich down. After this, Galbraith received a phone call from Wetrich, who told her to come back to the house to help him look for some papers. Galbraith returned to their house.

When Galbraith approached their back door, she saw Wetrich seated in a chair. When Wetrich noticed her, he jumped up and approached her so fast that she became scared. According to Galbraith, Wetrich came outside, grabbed her and pushed her against the brick wall of their house, and then forced her back inside.

Galbraith testified she yelled, "Roy, no. Please, no," but Wetrich forced her over to the computer, pushed her down on the floor, and held her there with his foot while he loaded a gun. Wetrich then put the gun barrel to Galbraith's head and said, "Do you want me to kill you, you stupid bitch? This is how easy it would be for me to blow your fucking head off."

Galbraith testified Wetrich then tossed the gun onto a nearby pool table and told her that he was going to teach her a lesson because she had run from him. Wetrich grabbed her shirt, jerked her up onto her knees, and then punched her in the chest, knocking the wind out of her. Wetrich let Galbraith go. She then ran across the room to the other side of the pool table. Galbraith testified Wetrich picked up a pool cue, broke it over his knee, and began jabbing it towards her throat and chest without making contact. Wetrich then told Galbraith that if she did not "stop crying and whining that [her] chest was hurt, that he was going to break it, and he was going to hurt [her] worse." Galbraith also testified she vaguely remembers sitting in the dining room chair before the pool cue incident with Wetrich's back towards her and then him turning around with the gun and telling her "that the boys didn't need any parents, and he was going to kill [them] both."

Wetrich dropped the pool cue when Wymer and his girlfriend Karen Wry arrived outside. Before Wymer and Wry came into the house, Wetrich told her to "[s]top crying and act like everything's okay." According to Galbraith, Wetrich then put the gun in a case, slid it across the pool table to her, and indicated that she should take it upstairs.

Wymer later testified that once in the house, he saw Galbraith holding her chest and she told him that Wetrich "was beating on her." Wry testified that she noticed a red mark on Galbraith's chest. Both Wymer and Wry testified Galbraith carried a metal case upstairs. Galbraith and Wry went upstairs together. Once there, Galbraith told Wry what had just happened with Wetrich. Wry observed that the metal case contained an "old revolver handgun." Wymer and Wry left. No one called the police.

According to Galbraith, a couple of days after the incident they both went to the hospital after she complained to Wetrich of chest

pain from him punching her. Before going, Wetrich told Galbraith she could only see a doctor if she "kept [her] mouth shut and let him tell the story of what happened." At the hospital, Wetrich stated that Galbraith had tripped over the cat and fallen down some stairs.

Then, in April 2009, Galbraith told the principal at their children's school about the March 7 incident. Galbraith and the principal agreed to meet at the school on April 3, 2009, so that Galbraith and the children could go to Safe Home. As Galbraith left her house that day with some belongings, two police officers approached her. The officers made sure Galbraith was alright and took her to the school. The police arrested Wetrich later that same day. Detective Damon Bell subsequently searched their house and seized some marijuana.

On April 6, 2009, Galbraith obtained a district court no-contact order prohibiting Wetrich from making contact with her. Wetrich subsequently called Galbraith from jail and told her not to go to court and testify against him and she should leave Kansas and go to his father's house in Missouri so the State would drop the charges against him. Wetrich also told Galbraith to say that the principal had coerced her into saying what had happened and it was all a lie.

*The case is tried by the jury.*

At the beginning of the jury trial, the district court denied Wetrich's motion seeking to admit evidence of an alleged false statement Galbraith made to the police during an interview following the incident on March 7, 2009. During the interview, she told the police about another incident between her and Wetrich that involved a gun, where she was forced to perform an oral sex act on a friend of Wetrich. On the second day of trial, Wetrich renewed this motion. At this time, the district court allowed defense counsel to question Galbraith about the alleged incident outside the jury's presence. Galbraith testified that she could not recall either telling the police this had happened or that it had occurred. The district court did not modify its prior ruling, and the evidence was not given to the jury.

Wetrich elected to testify but remembered the events differently, essentially denying all of Galbraith's allegations. Wetrich, however, did admit the marijuana belonged to him and that he violated the no-contact order.

The jury convicted Wetrich of kidnapping in violation of K.S.A. 21-3420; two counts of aggravated assault in violation of K.S.A. 21-3410; possession of a firearm in violation of K.S.A. 21-4204; possession of marijuana with a prior conviction in violation of K.S.A. 2008 Supp. 65-4162(a); violation of a protective order in violation of K.S.A. 2008 Supp. 21-3843; intimidation of a witness in violation of K.S.A. 21-3832; and domestic battery in violation of K.S.A. 2008 Supp. 21-3412a.

Wetrich challenged his criminal history score. He claimed the presentence investigation report incorrectly scored a 1988 Missouri burglary conviction as a person felony. Just prior to imposing sentence, the district court denied Wetrich's challenge to his criminal history score. The district court agreed with the State and ruled that Wetrich was collaterally estopped from challenging the Missouri conviction because he had previously challenged the criminal history unsuccessfully in another Johnson County case. The district court sentenced Wetrich to a controlling term of 124 months' imprisonment.

In this appeal, Wetrich makes two arguments. First, he contends the district court committed reversible error in ruling that his evidence challenging Galbraith's prior alleged "false allegation" to the police was inadmissible under K.S.A. 60-422. Wetrich next argues the district court erred in ruling that collateral estoppel barred him from challenging the use of his 1988 Missouri conviction for burglary in his criminal history score. Wetrich maintains that the district court erroneously interpreted K.S.A. 2009 Supp. 21-4715(c) by not giving him an opportunity to challenge his criminal history score with the burden of proof on him to contest the prior conviction.

We find no error in the court barring the evidence of the so-called false allegation made by Galbraith. We do find, however, that the court erred by denying Wetrich the opportunity to challenge the use of the Missouri conviction in a hearing where Wetrich

has the burden to prove how the conviction should be scored in his criminal history.

*Wetrich seeks to admit pictures of his wife performing a sex act on a friend.*

Wetrich argues the district court erred when it prevented his defense counsel from cross-examining Galbraith about her previous statement to the police in which she had falsely accused him of putting a gun to her head to force her to perform oral sex on his friend, Louis Glasgow. Wetrich contends that this evidence was admissible to impeach Galbraith's credibility about her gun allegation and the other allegations against him.

He contends this was relevant evidence because the key disagreement between himself and Galbraith during trial was whether there was a gun in the house on March 7, 2009, and whether he placed that gun to Galbraith's head. In his view, if she lied about the prior incident, then the jury could decide she lied about this one.

Prior to the commencement of the trial, Wetrich sought to introduce photographs depicting Galbraith performing an oral sex act on a man named Glasgow in an effort to attack her credibility and dispute her allegation to police that Wetrich forced her at gunpoint into doing the act. Wetrich argued that the photographs demonstrate Galbraith must have made a false allegation because they did not show a gun pointed at her head while she was engaged in the sex act. The district court ruled that this was evidence of a specific instance of misconduct and inadmissible under K.S.A. 60-422(d).

We view this issue as a question of district court discretion. The admission and exclusion of evidence lies within the sound discretion of the trial court. *State v. Leitner*, 272 Kan. 398, 408, 34 P.3d 42 (2001). According to the Supreme Court in *Fischer v. State*, 296 Kan. 808, Syl. ¶ 8, 295 P. 3d 560 (2013), judicial discretion is abused if the judicial action is:

- arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court;

- based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or
- based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.

*A review of some testimony is important at this point.*

During trial, Wetrich proffered Galbraith's testimony regarding the incident with Glasgow. Galbraith never denied making the statement but simply maintained she did not remember:

"Q. [defense counsel] Okay. Isn't it true that you told the police that Roy put - literally put a gun to your head and forced you to engage in fellatio or oral sex with Louis Glasgow?

"A. [Galbraith] He had threatened me with a gun before, yes.

"Q. That's not my question.

"A. I don't recall.

"Q. Isn't it true you told the police he put a gun to your head and made you do it?

"A. I don't recall. I don't remember.

"Q. If you told the police that he put a gun to your head and threatened you to do that, that is not true? Yes?

"A. I don't remember.

"Q. If you told the police he held a gun to your head and made you have sex with Louis Glasgow, that is not true?

"A. I don't remember.

"Q. You don't remember what?

"A. So much has happened I don't remember exactly.

"Q. What don't you remember?

"A. I don't remember exactly how many times he's had a gun to my head or exactly what it was for each time.

"Q. You're saying now that he's held a gun to your head on numerous occasions?

"A. He has.

. . . .

"Q. I just want to make sure that this record is clear. Nobody put a gun to your head and made you do those things; right?

"A. I don't recall. He threatened me in so many ways.

"Q. It's a yes or no question.

"A. I don't recall. I can't say either way. I don't remember

"Q. If he would have put a gun to your head, there would have been an eye witness to that; correct?

"A. That is incorrect. He did all the threatening when it was just him and I. There was no one else there, but I already knew before the person got there, I already knew the consequences, and what he expected."

After Galbraith's testimony, Wetrich conceded that the prior incident in question was a specific instance of conduct, but argued, "[T]he jury should know [Galbraith] said that before, and it's not true." The district court relied on K.S.A. 60-422 and *State v. Penn*, 41 Kan. App. 2d 251, 201 P.3d 752 (2009), to deny Wetrich's second request to cross-examine Galbraith on this issue before the jury.

*The law clearly bars evidence of specific instances of conduct.*

According to K.S.A. 60-422(c) and (d), when attacking the credibility of a witness, evidence of an individual's traits or character other than honesty or veracity or their opposites are inadmissible and evidence of specific instances of conduct tending to prove a trait of an individual's character are also inadmissible. In *Penn*, this court made clear, " ' "[A] witness's credibility may be attacked by showing the witness has character traits for dishonesty or lack of veracity, but those traits may only be proven by opinion testimony or evidence of reputation. Those traits may not be proven by specific instances of the witness's past conduct. [Citations omitted.]" ' " 41 Kan. App. 2d at 261 (quoting *State v. Lewis*, 252 Kan. 535, 536-37, 847 P.2d 690 [1993]).

The district court made a sound ruling based on these authorities. Wetrich wanted to depict Galbraith as a liar and wanted to use the photographs of the incident with the sex act as showing her trait of dishonesty. This was evidence of a specific instance offered to prove a trait of dishonesty. The statute, K.S.A. 60-422(d), clearly prohibits its admission. Further on this line, we do not see that admission of a photograph showing Galbraith performing a sex act with a man who is not her husband proves she is a liar. We question whether the photograph proves what Wetrich claims it proved. Obviously, if Wetrich did hold a gun to her head to force her to engage in this conduct, as she claimed to the police, one would not expect Wetrich to photograph his own criminal act of threatening her with a gun. The photograph does not show she was

lying to the police. A more reasonable view of why Wetrich sought its admission was to prove Galbraith was an unfaithful wife and a bad person who the jury should not believe. We agree with the district court, the photograph was inadmissible.

Wetrich relies solely on *State v. Barber*, 13 Kan. App. 2d 224, 766 P.2d 1288, *rev. denied* 244 Kan. 739 (1989), to support his argument that K.S.A. 60-422(d) does not prohibit a defendant to cross-examine a witness about a prior false allegation. *Barber*'s ruling does not apply here.

In *Barber*, this court found that the district court properly excluded evidence that the victim of an alleged crime of indecent liberties with a child had allegedly made prior false accusations of sexual abuse. 13 Kan. App. 2d at 227. This court, however, held that "under certain circumstances the limitation of 60-422 must bend to a defendant's right of cross-examination." 13 Kan. App. 2d at 226. This admission of evidence is not without limitations. This court further held:

"[D]espite the restriction of 60-422(d), *in a sex crime case*, the victim/complaining witness may be cross-examined about prior false accusations, and *if she denies making those accusations*, defendant may put on evidence of those accusations. However, the prior accusations are admissible only after the trial court has made a threshold determination that a reasonable probability of falsity exists." (Emphasis added.) 13 Kan. App. 2d at 227.

*Barber* is not helpful to Wetrich because the panel stated the ruling specifically applied to sex crime cases, which this case is not. Moreover, *Barber* requires that the victim denied making the allegation at issue. During the proffer offered by Wetrich, Galbraith did not deny making this specific accusation. Galbraith simply testified she could no longer recall the specific instance because Wetrich had threatened her on numerous occasions with a gun. Accordingly, the district court was not required to make a threshold determination whether falsity existed. The district court did not abuse its discretion in excluding the evidence under K.S.A. 60-422(d). See *Penn*, 41 Kan. App. 2d at 261.

*The district court should have allowed Wetrich to contest his criminal history in a hearing where the burden was upon him.*

The determination of a Kansas guideline criminal sentence depends upon the severity level of the crime and the criminal history of the offender. Therefore a prior conviction may be important in deciding what sentence to impose. This issue focuses on an interpretation of the applicable Kansas sentencing statutes. Interpretation of a statute is a question of law over which this court has unlimited review. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011). "An appellate court is not bound by the trial court's interpretation. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

The statutes create a procedure for determining an offender's criminal history. At sentencing, the State has the burden of proving a defendant's criminal history by a preponderance of the evidence. See K.S.A. 2009 Supp. 21-4715(a). Under K.S.A. 2009 Supp. 21-4715(b), a presentence investigation report containing the defendant's criminal history worksheet prepared for the district court will generally satisfy the State's burden of proof. But the defendant can challenge alleged errors in the history and the effect on the criminal history score. K.S.A. 2009 Supp. 21-4715(c) states:

"Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error. The state shall have the burden of producing further evidence to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history and the sentencing judge shall allow the state reasonable time to produce such evidence to establish the disputed portion of the criminal history by a preponderance of the evidence. *If the offender later challenges such offender's criminal history, which has been previously established, the burden of proof shall shift to the offender to prove such offender's criminal history by a preponderance of the evidence.*" (Emphasis added.)

Based on Wetrich's criminal history of one adult person felony and five adult nonperson felony convictions, the presentence investigator scored Wetrich in the nondrug criminal history category C. See K.S.A. 21-4709. Given the conviction at issue, a change in Wetrich's criminal history score would have a practical effect on his sentence. If the 1988 Missouri conviction was an adult *nonperson* felony conviction, Wetrich's criminal history score would change to category E.

At sentencing, the district court denied Wetrich the opportunity to challenge his criminal history score based upon collateral estoppel, an equitable doctrine. By doing so, the court overruled or overlooked the statute. We vacate that sentence and remand the matter to the district court to reconsider Wetrich's sentence after giving him an opportunity to challenge his criminal history score at a new sentencing hearing where he has the burden of proof as stated in the statute.

Convictions affirmed, sentence vacated, and case remanded for further proceedings.