NOT DESIGNATED FOR PUBLICATION

No. 124,212

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEREK CAMPBELL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed June 10, 2022. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MALONE and WARNER, JJ.

POWELL, J.:  Derek Campbell appeals the district court's summary denial of his motion filed pursuant to K.S.A. 60-1507, alleging his trial counsel had been ineffective. After a careful review of the record, we find Campbell's trial counsel did not provide ineffective assistance. Thus, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Campbell's direct appeal details the facts of his criminal trial. *State v. Campbell*, 308 Kan. 763, 764-68, 423 P.3d 539 (2018). We review only the facts relevant to this appeal.

Shortly after midnight on April 8, 2015, Campbell dialed 911 from his house to report that he had shot his wife, Rebecca. Campbell told the dispatcher his handgun inadvertently fired when he removed it from his holster and the bullet struck his wife, who was sitting in a recliner. The State eventually charged Campbell with first-degree murder.

While awaiting trial in Sedgwick County Jail, Campbell spoke with another inmate, Ronald Rudisill, about the shooting. Rudisill testified at trial that Campbell first told him he had lost his balance while unholstering his gun, which caused Campbell to squeeze the trigger and accidentally shoot Rebecca. Rudisill did not believe Campbell. Rudisill testified Campbell eventually confessed to shooting Rebecca intentionally. On cross-examination, defense counsel asked Rudisill about his criminal history, including a forgery conviction Rudisill had omitted on direct examination. The State tried to rehabilitate Rudisill with testimony from an Assistant United States Attorney, Terra Morehead, who had experience with Rudisill from prior criminal cases. Morehead testified she found Rudisill "'extremely credible'" when she worked with him.

Campbell testified in his own defense, claiming he had removed the bullets from his gun and started dry firing it, but, on the third dry fire, the gun went off and Rebecca was shot.

The jury convicted Campbell of first-degree premeditated murder. The district court sentenced Campbell to a hard 50 life sentence.

2

Campbell appealed, but the Kansas Supreme Court affirmed his conviction and sentence. 308 Kan. at 776. Notably, the court declined to consider Campbell's claim, raised for the first time on appeal, that the district court erred in admitting specific instances of conduct evidence used to bolster the credibility of Rudisill on the grounds that Campbell's trial counsel had failed to object to the admission of such evidence on those grounds. 308 Kan. at 770-71.

Not surprisingly, this led Campbell to file his present pro se motion pursuant to K.S.A. 60-1507, claiming his trial counsel was ineffective for failing to properly challenge Morehead's testimony, for failing to fully investigate Rudisill's criminal history and challenge his credibility, and for failing to object to prosecutorial error based on the State's presentation of Morehead's testimony.

The district court summarily denied Campbell's motion and held, among other holdings, that counsel's failure to properly object to the State's character evidence was unreviewable trial strategy.

Campbell timely appeals.

### DID THE DISTRICT COURT ERR IN SUMMARILY DENYING CAMPBELL'S K.S.A. 60-1507 MOTION?

Campbell argues the district court erred in summarily denying his K.S.A. 60-1507 motion. In his motion, and on appeal, Campbell argues his trial counsel provided ineffective assistance in three ways. First, Campbell asserts his counsel was ineffective for not properly objecting to Morehead's opinion testimony concerning Rudisill's credibility. Second, Campbell argues his trial counsel was ineffective for not properly investigating Rudisill's criminal history or for not impeaching Rudisill. Finally, Campbell

3

alleges his trial counsel was ineffective for not objecting to prosecutorial error stemming from the State calling Morehead as a witness to rehabilitate Rudisill's credibility.

*Standard of Review*

A district court has three options to resolve a K.S.A. 60-1507 motion. When the district court determines the motion, files, and records conclusively show the movant is not entitled to relief and summarily denies the motion, we review that summary denial de novo without deference to the district court's decision. *Beauclair v. State*, 308 Kan. 284, 293, 319 P.3d 1180 (2018).

*Analysis*

When a prisoner challenges his or her conviction or sentence under K.S.A. 2020 Supp. 60-1507, the district court must hold an evidentiary hearing on the motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2020 Supp. 60-1507(b). The movant bears the burden to prove such a motion warrants an evidentiary hearing. Also, the movant must make more than conclusory allegations and must state the evidentiary basis that supports the allegations, or such a basis must appear in the record. Once the movant satisfies that burden, the district court must grant a hearing, unless the motion is successive and seeks similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). When determining whether an evidentiary hearing must be held, the district court generally accepts the motion's factual allegations as true, but those factual allegations must be specific and not mere conclusions. *Skaggs v. State*, 59 Kan. App. 2d 121, 130-31, 479 P.3d 499 (2020), *rev. denied* 313 Kan. 1042 (2021).

In his K.S.A. 60-1507 motion, Campbell attacks his trial counsel's effectiveness. The Sixth Amendment to the United States Constitution guarantees an accused in a

4

criminal prosecution the right to assistance of counsel. This right applies to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Khalil-Alsalaami v. State*, 313 Kan. 472, 484-85, 486 P.3d 1216 (2021). The right to counsel includes the right to effective assistance of counsel to ensure criminal defendants receive a fair trial. Claims alleging ineffective assistance of counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). *Khalil-Alsalaami*, 313 Kan. at 485. The defendant must satisfy both prongs of the test: (1) that defense counsel's performance "was deficient under the totality of the circumstances" and (2) that the deficient performance prejudiced the defendant and "there is a reasonable probability a different result would have occurred absent the deficiency." *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020); see *Strickland*, 466 U.S. at 687.

Under the first prong, to establish deficient performance, "'the defendant must show that counsel's representation fell below an objective standard of reasonableness.' *Strickland*, 466 U.S. at 688." *Khalil-Alsalaami*, 313 Kan. at 485. A court's scrutiny on an attorney's past performance "is highly deferential and viewed contextually, free from the distorting effects of hindsight." 313 Kan. at 485. The court indulges in a strong presumption that counsel's conduct falls within the wide range of reasonable, effective representation. *Strickland*, 466 U.S. at 689.

> "Under *Strickland*'s second prong, defendants must show the deficient performance of counsel was prejudicial. To do so, defendant must establish with reasonable probability that the deficient performance affected the outcome of the proceedings based on the totality of the evidence. '"A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."' [Citations omitted.]" *Khalil-Alsalaami*, 313 Kan. at 486.

A. *Campbell was not prejudiced by Morehead's testimony.*

In his first ineffective assistance argument, Campbell alleges his trial counsel failed to properly object to Morehead's testimony. Our Supreme Court's opinion in Campbell's direct appeal explains the scene nicely. Campbell's counsel attacked Rudisill's credibility, extensively cross-examining him about his criminal history, including a 2006 forgery conviction not mentioned on direct examination. Trial counsel also asked about other times Rudisill provided prosecutors with information and if Rudisill remembered the name of a federal prosecutor he provided information to in 2006. Rudisill responded with Morehead's name.

The State sought to call Morehead as a witness to rehabilitate Rudisill's credibility. Campbell's counsel entered a "'multipart'" objection to Morehead's testimony:

> "'One, I think she's being called to vouch for [Rudisill]. Two, I think she's being called to bolster the State's witness' credibility. Three, Mr. Rudisill has been excused from his subpoena. I understand that as far as the prosecution knows he is not here. We're going to be hearing hearsay statements from Mr. Rudisill. I don't know whether they will be hearsay statements . . . he has made before and I think under *Crawford* that's inadmissible. So I object to calling Miss Morehead.'" *Campbell*, 308 Kan. at 769.

Trial counsel informed the district court that he suspected the State would call Morehead and ask if Rudisill testified in other cases and if he told the truth. The district court allowed Morehead to testify about her opinion of Rudisill's veracity because the defense had attacked Rudisill's credibility. The district court warned the State that it must lay a sufficient foundation to admit Morehead's testimony. The district court also granted Campbell's trial counsel a standing objection. Counsel also renewed all objections the next day when the State called Morehead to testify. "Morehead generally testified that Rudisill had provided her information in three prior cases she had worked on, and he

6

testified in two of them." 308 Kan. at 769. Morehead testified that she found Rudisill '"extremely credible"' on each occasion she worked with him.

The Supreme Court noted Campbell's difficulty on direct appeal was that Morehead was obviously going to bolster Rudisill's testimony because that is the purpose of rehabilitation testimony. 308 Kan. at 770. The Supreme Court believed Campbell's trial counsel "either missed or intentionally chose not to assert the more salient objection below, which is that Morehead's proposed testimony would impermissibly utilize specific prior instances to rehabilitate Rudisill's credibility as opposed to offering mere opinion testimony or evidence of reputation." 308 Kan. at 770. The Supreme Court found Campbell's argument waived because trial counsel objected before the district court on different grounds. 308 Kan. at 770-71. The dissent disagreed, finding trial counsel's objection preserved the issue and stating the Supreme Court should have reversed Campbell's conviction and remanded for a new trial. 308 Kan. at 777 (Johnson, J., dissenting).

In light of the Supreme Court's ruling, Campbell alleged in his pro se 60-1507 motion that trial counsel was ineffective for not objecting to Morehead's testimony because it would have impermissibly used specific prior instances. The district court disagreed, finding defense counsel's choice was one of trial strategy. See *State v. Butler*, 307 Kan. 831, 853-54, 416 P.3d 116 (2018) (strategic and tactical trial decisions are within lawyer's province).

A party may introduce evidence to support the credibility of a witness. K.S.A. 60-420. However, "evidence of specific instances of [a witness'] conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible." K.S.A. 60-422(d). When a person's character or character trait is at issue, "it may be proved by testimony in the form of opinion, evidence of reputation, or evidence of specific instances of the person's conduct . . . ." K.S.A. 60-446. But "evidence of specific instances of conduct

other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible." K.S.A. 60-447(a). Thus, a witness' credibility or lack thereof may be proven by testimony in the form of opinion testimony or evidence of reputation but "may not be proven by specific instances of the witness's past conduct." *State v. Lewis*, 252 Kan. 535, 536-37, 847 P.2d 690 (1993).

Campbell argues his trial counsel was ineffective for allowing Morehead to testify when Morehead was not a member of Rudisill's community. Relying on *State v. Penn*, 41 Kan. App. 2d 251, 268, 201 P.3d 752 (2009), Campbell asserts that, to admit character evidence, an impeaching witness must be (1) a member of the same community as the witness to be impeached, (2) a resident of that community for a substantial period, (3) aware of the general reputation of the witness for a specific character trait, and (4) know the witness has a reputation for the particular character trait in the community. Campbell asserts Morehead's testimony violates *Penn* because she testified only to three instances of conduct and, as an assistant United States attorney, is not a member of the same community as Rudisill, a "career criminal."

We need not resolve the difficult question of whether Morehead's testimony was proper opinion testimony or improper specific instances of conduct evidence used to bolster Rudisill's credibility. Even if we assume that such evidence was improper and Campbell's trial counsel was deficient for failing to properly object to such testimony, we conclude Campbell was not prejudiced by it.

First, it was Campbell's trial counsel who initially raised Rudisill's history of cooperation with prosecutors and law enforcement in counsel's extensive cross-examination of Rudisill. In other words, Rudisill's dealings with prosecutors and Morehead were before the jury before the State even attempted to call Morehead as a rehabilitation witness. In fact, the State only decided to call Morehead because trial counsel's cross-examination was so effective. In other words, assuming trial counsel's

8

performance was deficient for failing to object to Morehead's testimony as improper testimony of specific instances, and assuming the district court would have sustained that objection, those instances would have still been before the jury from Rudisill's cross-examination.

Campbell also cannot show prejudice because the other evidence at trial against him was strong. Tiffany Libel, a former and current love interest, and Tonya Campbell, Campbell's sister-in-law, both testified about Campbell's and Rebecca's unhappiness, their mutual jealousy, and the general difficulties in their marriage. The State also introduced Facebook messages between Campbell and Libel, where Campbell told Libel about his displeasure with Rebecca, that he had discussed divorce frequently with Rebecca, and that he wanted another child with someone other than Rebecca. Several of the messages from Campbell to Libel were sexual in nature. Campbell's computer also revealed Campbell searched for divorce-related information and visited several dating sites.

Finally, Campbell's conflicting stories were implausible and harmed his credibility. When law enforcement arrived after Campbell called 911, Campbell claimed his gun accidently discharged when he removed it from its holster. At trial, Campbell claimed he removed the gun from its holster and unloaded the bullets into his hand. He placed the gun in its holster and checked on their daughter. While waiting for Rebecca to plug in his phone to charge, he started messing around with his gun and dry firing it. On the third dry fire, it went off and Campbell discovered a spent cartridge in the chambers. Campbell then noticed Rebecca slumped over in her chair.

Campbell cannot establish a reasonable probability that his trial counsel's failure to properly object to Morehead's testimony as impermissible evidence of specific conduct affected the outcome of the trial. See *Khalil-Alsalaami*, 313 Kan. at 486. Because

Campbell has failed to establish prejudice, he cannot show his trial counsel provided ineffective assistance.

B.	*Trial counsel properly investigated Rudisill's criminal history and effectively used it to impeach Rudisill.*

Campbell also complains of what he views as his trial counsel's failure to sufficiently investigate Rudisill's criminal history or a failure to sufficiently impeach Rudisill based on his criminal history.

A trial counsel has a duty to make a reasonable investigation or make a reasonable decision that makes an investigation unnecessary. In an ineffective assistance case, a decision not to investigate is assessed for reasonableness under the circumstances, "'applying a heavy measure of deference to counsel's judgments.'" *Butler*, 307 Kan. at 854.

Our Supreme Court noted in Campbell's direct appeal that Campbell's trial counsel cross-examined Rudisill extensively about his criminal history. *Campbell*, 308 Kan. at 768. That cross-examination included information about a forgery conviction that Rudisill failed to mention on direct examination. Trial counsel questioned Rudisill at length about the prior cases in which he provided information or assistance to the prosecutors. Campbell's trial counsel also questioned Rudisill about his motives in providing information and testifying in Campbell's case. Counsel's cross-examination was effective enough at harming Rudisill's credibility that the State felt compelled to call Morehead—originally listed as a potential defense witness—to rehabilitate Rudisill's credibility.

Campbell does not explain what more he believed his trial counsel could have done to impeach Rudisill based on Rudisill's criminal history. Indeed, while the extent of

trial counsel's investigation is unknown, his knowledge was sufficient to damage the credibility of Rudisill enough for the State to call a rehabilitation witness. Campbell's trial counsel's performance in this instance was not deficient.

But even if we were to find trial counsel's performance deficient, Campbell cannot establish prejudice. Rudisill testified about his criminal history on direct examination, as well as about his dealings with prosecutors in other cases. A copy of his criminal history worksheet was also admitted by the State. Thus, the jury was aware of Rudisill's extensive criminal past.

C.      *The prosecutor did not engage in misconduct.*

Campbell's final assertion of ineffective assistance of counsel alleges that his trial counsel failed to object to prosecutorial misconduct. Campbell's argument appears to be, relying on the notion that prosecutors have a duty to properly present their case, that the prosecutor engaged in misconduct for knowingly seeking to introduce improper specific instances of conduct evidence to bolster Rudisill's credibility. See *State v. Ruff*, 252 Kan. 625, 636, 847 P.2d 1258 (1993) (duty of prosecutor to properly present case). Campbell alleges his trial counsel's failure to object to this misconduct was tantamount to ineffective assistance of counsel.

The district court found trial counsel was not ineffective because the record did not show the prosecutor engaged in any error. As the district court found, the State sought to call Morehead only after trial counsel challenged Rudisill's credibility. Moreover, Campbell's trial counsel did object to the State calling Morehead to rehabilitate Rudisill's credibility, arguing Morehead would vouch for and bolster Rudisill's credibility. The trial court overruled trial counsel's objection. Thus, Campbell's trial counsel did attempt to prevent Morehead's testimony of her opinion of Rudisill's credibility.

Unlike prosecutorial error, acts of "'prosecutorial misconduct' are erroneous acts done with a level of culpability that exceeds mere negligence." *State v. Sherman*, 305 Kan. 88, 114, 378 P.3d 1060 (2016). For a prosecutor's acts to constitute misconduct, the prosecutor must act "with knowledge and intent outside the wide latitude afforded prosecutors, or with a malicious or gross disregard for the fair trial rights of the defendant." 305 Kan. at 114.

Campbell claims the prosecutor offered Morehead's testimony knowing it was improper specific instances of conduct evidence to be used to bolster Rudisill's credibility. The record does not support this allegation. It was Campbell's trial counsel who subpoenaed Morehead to testify in the first place, and, as the district court found, the State only sought to present Morehead's testimony after trial counsel's damaging cross-examination of Rudisill. Moreover, the prosecutor did not attempt to introduce Morehead's testimony after an adverse ruling by the trial court as it overruled trial counsel's objection to the State calling Morehead as a witness. Finally, in our view, the question of whether Morehead's testimony should be properly characterized as legitimate opinion evidence or improper specific instances of conduct evidence is a highly debatable one. Thus, we see no bad faith on the part of the prosecutor by offering Morehead's testimony.

Campbell's prosecutorial misconduct argument strikes us as his attempt to attack the admission of Morehead's testimony via another route. But as we have already explained, the key question is whether Morehead's testimony affected the outcome of the trial. Again, even if we assume that Campbell's trial counsel had failed to properly object to Morehead's testimony by arguing that it was impermissible specific instances of conduct evidence, such a failure was not prejudicial to Campbell as the evidence of his guilt was strong even without Morehead's testimony.

Our review of the record shows that Campbell's trial counsel was not ineffective and that Campbell has failed to meet his burden to show his motion warranted an evidentiary hearing. The district court did not err in summarily denying Campbell's K.S.A. 60-1507 motion.

Affirmed.